HANDAL, Plaintiff-Respondent, v. AMERICAN FARMERS
MUTUAL CASUALTY COMPANY, Defendant-Respond-
ent: HACKER, Defendant-Appellant.

*No. 75–535. Submitted on briefs June 2, 1977.—*
*Decided July 1, 1977.*
(Also reported in 255 N. W. 2d 903.)

There was a joint brief by *Richard A. McDermott* of Milwaukee, for defendant-appellant Darrell A. Hacker, and by *William J. Haese* of Milwaukee, for cross-appellant Helen Handal.

For the respondent the cause was submitted on the brief of *Daniel R. Riordan, Brian J. Henderson* and *Ames, Riordan, Crivello & Sullivan,* all of Milwaukee.

BEILFUSS, C. J.   Ivan Hacker, of Lake Park, Iowa, the father of Darrell Hacker, was issued an insurance policy by American Farmers. This policy was entitled— "Family Automobile Policy"—and was effective from July 8, 1965 to January 8, 1966. At the time of the issuance of the policy, Ivan Hacker was the titled owner of a 1956 Buick automobile which was the vehicle described in the Declarations of the insurance policy.

When the policy was issued, and at all times in question, Darrell Hacker was a member of the United States

Armed Forces and stationed at the Nike Missile Site located on Brown Deer Road in Milwaukee County, Wisconsin.

During July of 1965, Ivan Hacker sent two written notes to American Farmers concerning the insurance policy and his son. Ivan Hacker apparently wanted to make sure that his son was covered when he used the car while home on leave. He requested that a classification for a driver under twenty-five years of age be placed on the policy. Darrell Hacker was twenty years old, a minor under Iowa law.

The first note was received by American Farmers on July 16, 1965, along with payment of the premium for the policy period. It stated:

"Lake Park, Ia.
"Will you please put under 25 on this as our son is coming home on leave and he will want to drive the car. Thank you.

Policy # 30766                                    Ivan Hacker"

After no response, the following inquiry was sent:

"Policy No. 30766
"Why haven't we heard from you on this Ins. When I sent our Premium I asked you to put under 25 on it and we haven't heard one word. Please let us know at once if you can. Please.
"Thank you.

Ivan Hacker
Lake Park, Iowa."

On August 4, 1965, American Farmers responded, assuring Hacker that his son was covered while home on leave.

Darrell Hacker returned home to Iowa in July of 1965 on leave from military service. He was allowed to use the 1956 Buick, and with permission from the named insured, Ivan Hacker, he returned to Milwaukee County with the automobile. Darrell Hacker retained possession

of the vehicle in Milwaukee County from July, 1965 through the date of the accident November 9, 1965.

On August 15, 1965, Ivan Hacker died in Iowa. An affidavit assigning all rights to the automobile to Darrell Hacker was executed by the heirs of Ivan Hacker on September 29 and October 2, 1965. Then, on October 25, 1965, Darrell Hacker gave his mother a power of attorney[1] to make application for certificate of title for the automobile. Finally, on November 1, 1965, Ivan Hacker by his surviving spouse, Anna Lucy Hacker, assigned certificate of title to Darrell Hacker who, through his mother by reason of a power of attorney, made application for certificate of title to the 1956 Buick. The certificate of title to the Buick was issued that same day by the State of Iowa in the name of Darrell Allen Hacker.

On November 9, 1965, Nasri Handal was killed when he was crushed between two parked motor vehicles when one of the vehicles was struck by the 1956 Buick operated by Darrell Hacker. The accident occurred in Milwaukee County.

■ The trial court noted that under either Wisconsin or Iowa conflicts rules, the law of Iowa was controlling. In contract disputes in Wisconsin the grouping of contacts rule controls the resolution of conflicts of state law. Contract rights "are to be 'determined by the local law of the state with which the contract has its most significant relationship.' " *Peterson v. Warren,* 31 Wis.2d 547, 557, 143 N.W.2d 560 (1966) (rule stated) ; *Urhammer v. Olson,* 39 Wis.2d 447, 450, 159 N.W.2d 688 (1968) (rule adopted). In Iowa the law of the place where the contract was made controls. *Bjork v. Dairyland Ins. Co.,* 174 N.W.2d 379 (Iowa 1970).

---

[1] The appellant argues that Darrell Hacker, as a minor, could not give such a power to his mother. This question is not dispositive of the case and we have not reached it.

This court's analysis of significant contacts in *Peterson* at 558–59, and its explanation of how to evaluate those contacts in *Haines v. Mid-Century Ins. Co.*, 47 Wis.2d 442, 446–47, 177 N.W.2d 328 (1970),[2] demonstrates that the trial court correctly concluded that the law of Iowa controls.

The trial court noted:

"Among the Declarations of the policy it is clearly stated:
" 'The automobile will be principally garaged at address of insured as indicated above unless otherwise stated herein.'
"The address stated above is 'Lake Park, Iowa.' "

It found the issue of where the automobile was principally garaged controlling and noted that in Iowa " 'the

---

[2] The court quoted the proposed official draft of *Restatement, Conflict of Law 2d*, sec. 188:

" '188. *Law Governing in Absence of Effective Choice by the Parties.*

" '(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, as to that issue, has the most significant relationship to the transaction and the parties under the principles stated in sec. 6.

" '(2) In the absence of an effective choice of law by the parties (see sec. 187), the contacts to be taken into account in applying the principles of sec. 6 to determine the law applicable to an issue include:

" '(a) the place of contracting,
" '(b) the place of negotiation of the contract,
" '(c) the place of performance,
" '(d) the location of the subject matter of the contract, and
" '(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

" 'These contacts are to be evaluated according to their relative importance with respect to the particular issue.

" '(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in secs. 189–199 and 203.' "

declarations attached to the policy are a pertinent part thereof and as much a part of the policy as the coverage itself.' "[3]

In a well reasoned opinion, supported by many authorities, the court concluded that the Buick was not principally garaged in Lake Park, Iowa. It found this breach to be material, thus avoiding protection under the policy. While we agree with the trial court's reasoning concerning the principally garaged clause, we do not agree that in this particular case the breach of that clause avoids coverage.

The letter of American Farmers responding to Ivan Hacker's letters requesting insurance for Darrell Hacker while he was home on leave is significant. That letter read as follows:

"August 4, 1965
"Ivan Hacker
"Lake Park, Iowa
"Re: Policy No. 30766

"Dear Mr. Hacker:

"Thank you very much for your note received in this office, Mr. Hacker. Because your son is coming home from the armed services we will not require a change of classification or additional premium at this time. However, when the boy is discharged from the service and comes home permanently we will require a change of classification and an additional charge will be made at that time.

"For the present time your son will have the protection that you have on your policy as long as he has permission

---

[3] *Aeroline Flight Service, Inc. v. Insurance Company of North America*, 257 Iowa 409, 417, 133 N.W.2d 80 (1965). *Accord, State Automobile & Casualty Underwriters by Automobile Underwriters v. Hartford Accident & Indemnity Co.*, 166 N.W.2d 761 (Iowa 1969).

to drive your automobile without change of classification at this time.

"Sincerely,
"Paul R. Kautzky

"Underwriting Manager"

■

The insurance company's letter stated that while Darrell Hacker was home on leave a policy classification change was unnecessary, and for the present time he would have the protection of the policy as long as he had Ivan Hacker's permission to drive without change of classification. The letter also stated that "when the boy is discharged from the service and comes home permanently we will require a change of classification and an additional charge will be made at that time." An average reasonable person could understand this sentence to mean that as long as Darrell Hacker was in the military he was protected by the policy. If the sentence was read in that manner it created an ambiguity. The ambiguity is whether Darrell Hacker was covered by the policy after he took the car to Milwaukee for several months. The letter could reasonably lead one to believe that he was covered because he was still in military service.

■

The letters from Hacker to the insurance company and the company's response were contractual in nature. They referred to the insurance policy by its number, and when parties have plainly manifested their intent that papers or subsequent correspondence are to be part of the contract, it has been held that they are part of the contract.[4] These letters constituted an agreement between the parties concerning Darrell Hacker's use of the Buick; they became part of the contract.

---

[4] 1 Couch, *Insurance*, Sec. 4:46, pp. 206–07 (2d ed. 1959); *contra*, 13A Appleman, *Insurance Law and Practice*, sec. 7601, p. 267 (rev. ed. 1976).

Just as an ambiguity in a written contract would be construed against the insurer and in favor of the insured because it was the insurer that drafted the policy,[5] so must the ambiguous letter drafted by the insurance company be construed in favor of the insured. Contracts of insurance should not be construed through the magnifying eye of a technical lawyer, but rather from the standpoint of what an ordinary man would believe the contract to mean.[6]

We need not determine whether this ambiguity would in and of itself be ground for coverage in spite of the breach of the principally garaged clause. This is because of the sequence of events which occurred prior to the accident and their relation to the contract.

Ivan Hacker, the named insured, died on August 15, 1965. It is impossible to determine from the stipulated facts whether Darrell Hacker was given permanent custody of the Buick when he took it to Milwaukee in July, or whether the death of Ivan Hacker changed the family's circumstances in such a manner that Darrell Hacker was permitted to keep the car in Milwaukee. Whatever the case, at the time of his death it could not be said that the Buick was principally garaged in Milwaukee; it had only been in Milwaukee approximately two to three weeks. Therefore, prior to Ivan Hacker's death, he did not have a duty to inform the insurance company that the Buick was no longer principally garaged in Lake Park, Iowa.

---

[5] *Dublinske v. Pacific Fidelity Life Ins. Co.*, 230 N.W.2d 924, 926 (Iowa 1975).

[6] *Aeroline Flight Service, Inc. v. Insurance Company of North America*, 257 Iowa 409, 133 N.W.2d 80 (1965); *Murphy v. New York Life Ins. Co.*, 219 Iowa 609, 258 N.W. 749 (1935).

According to the policy, when Ivan Hacker died his spouse became the named insured.[7] Thus, at some point after Ivan Hacker's death it became the duty of the named insured, Anna L. Hacker, to inform the insurance company that the car was principally garaged in Milwaukee, Wisconsin.

It is unnecessary for this court to establish exactly when that duty would arise. But, as a matter of policy, it can be said that the duty had not become fixed at the time of the accident. The accident occurred less than three months after Ivan Hacker's death. His wife had not originally been a party to the contract and, in our opinion, it would violate public policy to allow avoidance of coverage because she failed to give notice of the change in location of the Buick.

The public policy which supports such a holding has been described as the principle of honoring reasonable expectations. This principle states that "objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations."[8] The

---

[7] The policy stated: "16. *Assignment.* Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon; if, however, the insured named in the declarations, or his spouse if a resident of the same household shall die, this policy shall cover (1) the survivor as named insured, (2) his legal representative as named insured but only while acting within the scope of his duties as such, (3) any person having proper temporary custody of an owned automobile, as an insured, until the appointment and qualification of such legal representative, and (4) under division 1 of Part I (coverage C) any person who was a relative at the time of such death."

[8] Keeton, *Basic Text on Insurance Law*, sec. 6.3(a), p. 351 (1971).

letters of Ivan Hacker demonstrate that he desired coverage for his minor son, and that he was willing to pay an increased premium for this coverage. After his death, his widow and son presumed that his efforts had obtained this coverage. The facts of this case are such that these reasonable expectations should be honored.

This is not to suggest that one who becomes the named insured by reason of the death of a spouse who was the named insured need never comply with the provisions of the policy. One who expects to be protected by the policy must comply with it. However, a spouse, who was not a party to the contract, reasonably believing that coverage existed, must be given a grace period before he or she must comply with technical, not commonly known provisions of a policy.

Again we need not determine whether this public policy would in and of itself be ground for coverage in spite of the breach of the principally garaged clause. It is the ambiguity created by American Farmers, coupled with public policy, that compel a holding that coverage existed.

*Goodsell v. State Automobile & Casualty Underwriters,* 261 Iowa 135, 153 N.W.2d 458 (1967), indicates how the Iowa Supreme Court probably would decide the issue. In March, 1963, Vern S. Goodsell purchased a Volkswagen automobile for his daughter, Sandra. Initially, title was in his name, but in May, 1964, title was transferred to Sandra's name. Vern Goodsell had purchased insurance on the automobile and he was designated as the only named insured.

In July, 1964, Sandra Goodsell moved from the family home in Denver, Iowa to Minneapolis, Minnesota where she began a training course with Northwest Airlines. Subsequently she moved to Detroit, Michigan for further

training. In September, 1964, while in Detroit, she was involved in an automobile accident. The Goodsells made a claim which the insurance company denied because Sandra Goodsell was not a resident of Vern Goodsell's household and therefore not covered by the policy.

On appeal, the Iowa Supreme Court found the word "resident" ambiguous. Because the term was ambiguous, it construed the contract. The court then examined what an ordinary person would expect the policy to mean. In doing so it found that Goodsell would expect his daughter to be covered by the policy while she was driving in Detroit.

The *Goodsell Case* is similar to this case. Both Darrell Hacker and Sandra Goodsell were minors living away from the family residence. In each case a parent was the named insured. In each case the insurance company created a contractual ambiguity. In *Goodsell* the court found that the father's reasonable expectations were that his daughter would be covered by the insurance policy. The reasonable expectations of the Hackers were that Darrell Hacker would be covered by the insurance policy. Relying on *Goodsell,* it seems probable that the Iowa Supreme Court would hold that the ambiguity created by the insurance company's letter forced a construction of the contract in favor of the insured. Because of the ambiguity it would look to the reasonable expectations of the Hackers.

American Farmers argues that even if the breach of the principally garaged clause did not avoid coverage, coverage was avoided because title to the Buick was transferred to Darrell Hacker. The company relies on paragraph 16 of the policy.[9] It argues that after the death of Ivan Hacker, Darrell Hacker did not fall within the protection of that paragraph.

After the death of the named insured, the policy covered: (1) Anna Hacker, the surviving spouse, as named

---

[9] This provision is found at footnote 7.

insured; (2) the decedent's legal representative while acting within the scope of his duties; or (3) any person having proper temporary custody of an owned automobile until the appointment and qualification of a legal representative. Additionally, any person who was a relative at the time of the named insured's death received coverage for medical expenses caused by an automobile accident.

American Farmers appropriately notes that Hacker was not covered under provision one or two of paragraph 16, and provision four relates to medical expenses which are unrelated to this dispute. It also argues that provision three does not apply because it is concerned with temporary custody, and after Darrell Hacker acquired title it could not be said that he had temporary custody. It argues that the transfer of title was an assignment of interest without consent of the company and it was not binding on the company.

The issue of whether title was transferred to Darrell Hacker is not dispositive. After Ivan Hacker's death, Anna L. Hacker, as surviving spouse, became the named insured.

The policy states:

" 'Owned Automobile' means:
"(a) a private passenger, farm or utility automobile described in the policy for which a specific premium charge indicates that coverage is afforded, . . ."

The policy also provides that:

"PERSONS INSURED UNDER COVERAGES A & B [concerning bodily injury and property damage liability]
"(a)  With respect to the owned automobile,
"(1)  the named insured and any resident of the same household,
"(2)  any other person using such automobile, provided the actual use thereof is with the permission of the named insured; . . ."

Thus, even if the title was transferred to Darrell Hacker, the Buick remained an "owned automobile." It was a private passenger automobile described in the policy for which a specific premium indicated that coverage was afforded. Nowhere in the definition of owned automobile did it state that the insured automobile must be owned in fact by the named insured.

Under the "Persons Insured" section of the policy it is stated, with respect to the owned automobile, that coverage is provided to any person using the automobile, provided the use is with the permission of the named insured. Anna Hacker became the named insured upon the death of Ivan Hacker, and there is no dispute that Darrell Hacker had her permission to drive the Buick.

Additionally, Darrell Hacker would be covered as a resident of the same household as the named insured. In *Goodsell v. State Automobile & Casualty Underwriters,* 261 Iowa 174, 153 N.W.2d 458 (1967), in determining residence, the court was concerned with the intent of the person claiming she was a resident of her father's household. When Darrell Hacker applied for title to the 1956 Buick prior to the accident, he listed his residence as Lake Park, Iowa. He did not apply for a title from Wisconsin, which a Wisconsin resident is required to do, but rather applied for a title from Iowa. Even though he was stationed in Milwaukee, he viewed his residence as Iowa. Again, relying on *Goodsell,* we believe it is clear that the Iowa court would find Hacker a resident of the named insured's household.

Under the provisions of the policy on "Owned Automobile" and "Persons Insured," Darrell Hacker was protected, regardless of whether he owned the Buick. If these provisions conflict with paragraph 16 concerning "Assignment of Interest" in such a way as to create an

ambiguity, this ambiguity must also be construed against the author of the policy, the insurance company. *State Automobile & Casualty Underwriters by Automobile Underwriters v. Hartford Accident & Indemnity Co.*, 166 N.W.2d 761, 763 (1969).

*By the Court.*—The judgment of the plaintiff, Helen Handal, against the defendant, Darrell A. Hacker, is affirmed; the judgment dismissing the action against the defendant, American Farmers Mutual Casualty Company, is reversed and remanded with directions to enter judgment not inconsistent with this opinion.