AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN, Plaintiff-Respondent,

Thomas R. McGREE and Equitable Assurance Company, Plaintiffs,

v.

Ilerd CLEVELAND and Home Mutual Insurance Company, Defendants-Appellants.

Court of Appeals

*No. 84–1437. Argued March 16, 1985.—Decided April 9, 1985.*
(Also reported in 369 N.W.2d 168.)

[14] *Allen v. Allen,* 78 Wis. 2d 263, 270, 254 N.W.2d 244, 248 (1977).

For the appellants there were briefs by *Charles B. Harris* and *Richards, Wall & Harris* and oral argument by *Charles B. Harris* of Hudson.

For the respondent there was a brief by *Susan Schleif Gherty* and *Gherty and Dunlap* and oral argument by *Susan Schleif Gherty* of Hudson.

Before Cane, P.J., Dean and LaRocque, JJ.

CANE, P.J. Ilerd Cleveland and his insurer, Home Mutual Insurance Company, appeal a judgment imposing liability for damages caused to Thomas McGree. Cleveland and Home Mutual contend that Minnesota's no-fault automobile insurance statutes apply to this case and that McGree's insurer is liable under the no-fault law for paying part of McGree's damages. The trial court applied Wisconsin law, pursuant to which Cleveland and Home Mutual were liable for all of McGree's damages, including those paid by collateral sources. Because Wisconsin law is applicable to this action, we affirm the judgment.

McGree and Cleveland were both Wisconsin residents when they were involved in an automobile accident in Minnesota. They were traveling in separate automobiles. Cleveland was 100% negligent in causing the accident. Both parties were insured by Wisconsin insurers under policies issued in Wisconsin.

The jury awarded McGree damages, including an amount for past medical bills and past wage loss that was paid by McGree's insurer, American Standard Insurance Company of Wisconsin. American Standard was subrogated to McGree's claim for this amount because of a provision in an insurance contract between them. The jury also awarded damages to McGree for future medical expenses and future retraining costs.

Cleveland and Home Mutual moved the trial court to deny recovery for past and future medical expenses, the past wage loss, and the retraining cost on the basis that McGree's insurer is liable for these items of damage under Minnesota's no-fault insurance law. The trial

court decided that Minnesota law did not apply to this case and denied the motion to reduce the judgment.

We can dispose of part of this appeal summarily. Cleveland and Home Mutual contend that McGree's insurer is liable for future medical expenses and retraining costs under Minnesota's no-fault insurance law. *Haugen v. Town of Waltham*, 292 N.W.2d 737, 740–41 (Minn. 1980), the Minnesota Supreme Court held to be unconstitutional the part of the Minnesota no-fault law making the plaintiff's insurer liable for certain types of future losses. Because the *Haugen* decision unconditionally invalidates that part of the statute, no conflict exists between Minnesota and Wisconsin law. Under either state's law, Cleveland and Home Mutual are liable for the future damages.

A true conflict of law does exist, however, on the issue of liability for past medical expenses and wage loss paid by McGree's insurer. Under Minnesota's no-fault law, a plaintiff cannot recover from a tortfeasor for benefits paid by his own insurer. Section 65B.51(1), Minn. Stats. Also, the plaintiff's insurer generally has no subrogation right to recover from the tortfeasor for benefits paid to the plaintiff. Section 65B.53, Minn. Stats. Under Wisconsin law, however, a plaintiff may recover from a tortfeasor for damages paid by the plaintiff's insurer unless the insurer has a contractual subrogation right to recover such amounts. *Rixmann v. Somerset Public Schools*, 83 Wis. 2d 571, 582, 266 N.W.2d 326, 331–32 (1978). Regardless of whether the insurer is subrogated to the plaintiff's claim, the tortfeasor is liable under Wisconsin law to either the plaintiff or his insurer for amounts paid by collateral sources.

The parties incorrectly identify the threshold issue to be whether to apply Wisconsin's law permitting subrogation or Minnesota's no-fault law prohibiting subroga-

tion. Subrogation is derivative of the plaintiff's right to recover from the tortfeasor. The original right of the plaintiff measures the extent of the subrogated party's right. *Garrity v. Rural Mutual Insurance Co.*, 77 Wis. 2d 537, 541, 253 N.W.2d 512, 514 (1977). Unless the plaintiff has a right to recover from the tortfeasor, no issue of subrogation arises. This is especially true in this case because McGree's insurer has only a contractual subrogation right.[1] *Rixmann*, 83 Wis. 2d at 582, 266 N.W.2d at 331–32. As a result, the threshold question we must answer is whether McGree has a right to recover from Cleveland and Home Mutual for damages paid by McGree's insurer.

Wisconsin adheres to the collateral source rule. *Id.* at 582–83, 266 N.W.2d at 332. Under this rule, a plaintiff may recover the reasonable value of all items of loss, regardless of whether the plaintiff received compensation for his damages from a source other than the tortfeasor. *Payne v. Bilco*, 54 Wis. 2d 424, 433, 195 N.W.2d 641, 647 (1972). By contrast, Minnesota does not recognize the collateral source rule. Section 65B.51(1) of Minnesota's no-fault insurance law specifically provides

---

[1] McGree's insurer, American Standard, incorrectly argues that it is legally subrogated to McGree's claim for damages paid by the insurer. Legal subrogation arises by application of principles of equity, and contractual subrogation arises from the contract or acts of the parties. *Garrity v. Rural Mut. Ins. Co.*, 77 Wis. 2d 537, 543, 253 N.W.2d 512, 515 (1977). American Standard relies on language in *Heifetz v. Johnson*, 61 Wis. 2d 111, 124, 211 N.W.2d 834, 841 (1973), to support its claim that payment of benefits to McGree operated as an assignment of part of his claim as a matter of law. In *Rixmann v. Somerset Pub. Schools*, 83 Wis. 2d 571, 576–82, 266 N.W.2d 326, 329–32 (1978), however, our supreme court specifically considered its language in *Heifetz* and concluded that insurance policies are investment contracts that do not give rise to subrogation rights in the absence of an express provision in the policy. American Standard's subrogation right, therefore, is strictly a contractual right.

that economic loss benefits that have already been paid shall be deducted from any tort recovery.[2] Because the applicability of the collateral source rule determines Cleveland's and Home Mutual's liability for the damages paid by McGree's insurer, an outcome determinative conflict exists.

Two tests apply to determine which state's law to apply. First, we consider whether the contacts of one state to the facts of the case are so obviously limited and minimal that application of that state's law constitutes officious intermeddling. *Gavers v. Federal Life Insurance Co.*, 118 Wis. 2d 113, 115–16, 345 N.W.2d 900, 901–02 (Ct. App. 1984). Second, if no officious intermeddling would result, then we apply the choice-influencing considerations adopted in *Heath v. Zellmer*, 35 Wis. 2d 578, 596, 151 N.W.2d 664, 672 (1967). The choice-influencing factors are:

(1) Predictability of results;
(2) Maintenance of interstate order;
(3) Simplification of the judicial task;
(4) Advancement of the forum state's governmental interest;
(5) Application of the better rule of law.

---

[2] Economic loss benefits are defined in sec. 65B.44, Minn Stats. They include the traditional elements of tort recovery such as medical expenses and income loss. One of the principal features of Minnesota's no-fault insurance law is that benefits must be paid regularly as losses occur. The plaintiff's insurer is obligated under the no-fault law to pay such economic loss benefits before any action is commenced against the tortfeasor. American Standard complied with this aspect of Minnesota's no-fault law without objecting to the applicability of the statute to these Wisconsin parties. Minnesota conditions the privilege to transact business in that state on the requirement that insurers provide no-fault benefits whenever an insured is injured in Minnesota regardless of where the policy was issued. Section 65B.50(2), Minn. Stats.

Minnesota's only contact with the facts of this case is as the site of the accident. By contrast, both parties are Wisconsin residents. They are insured by Wisconsin insurers under policies issued in this state. Based on these facts, Minnesota's primary interest is to regulate highway safety within its borders. *See Hunker v. Royal Indemnity Co.,* 57 Wis. 2d 588, 602, 204 N.W.2d 897, 904 (1973). Only Wisconsin, however, has an interest in regulating the economic and social consequences of the tortious conduct.

Considering the respective interests of the two states in relation to the collateral source rule, we conclude that Wisconsin's law should apply. Minnesota's no-fault law is intended to regulate the economic and social consequences of tortious conduct, and it is not intended to reduce the incidence of such conduct. *See* sec. 65B.42, Minn. Stats. (purposes of no-fault insurance law identified) ; *see also Milbradt v. American Legion Post,* 354 N.W.2d 499, 502 (Minn. 1984). Application of Minnesota's law therefore would constitute officious intermeddling. Also, Wisconsin's collateral source rule is intended to deter negligent conduct by placing the full cost of the wrongful conduct on the tortfeasor. *Rixmann,* 83 Wis. 2d at 580–81, 266 N.W.2d at 331. Application of Wisconsin's law actually promotes Minnesota's interest in assuring highway safety.

Our conclusion that Minnesota has a minimal interest in this lawsuit is supported by our supreme court's decision in a factually similar case. In *Wilcox v. Wilcox,* 26 Wis. 2d 617, 133 N.W.2d 408 (1965), the supreme court considered whether to apply Wisconsin's law permitting a guest to recover from a host upon proof of ordinary negligence, or Nebraska's law permitting recovery from a host only upon proof of gross negligence. The accident occurred in Nebraska, but all of the parties, including the liability insurer, were domiciled in Wisconsin. The

supreme court concluded that the occurrence of the accident outside the state was fortuitous and should not influence the choice of law to apply. *Id.* at 633, 133 N.W.2d at 416. Similarly, in this case the occurrence of the accident in Minnesota is fortuitous, and the refusal to apply the collateral source rule has no relationship to regulating conduct within that state.

We arrive at the same conclusion in favor of Wisconsin law by applying the choice-influencing factors. The determinative factors are advancement of the forum state's governmental interest and application of the better rule of law. The first factor, predictability of results, weighs slightly in favor of Wisconsin because all of the parties are Wisconsin residents or corporations whose expectations presumably were that Wisconsin law would apply in the event of an accident. *Hunker,* 57 Wis. 2d at 600–01, 204 N.W.2d at 903. Maintenance of interstate order is not implicated by the application of either state's law because neither choice would be totally unreasonable. *Heath,* 35 Wis. 2d at 600, 151 N.W.2d at 674. Simplification of the judicial task is also not a factor in this case. Wisconsin courts already are familiar with the collateral source rule, while rejection of the rule simply requires that recovery be denied for damages paid by a collateral source.

The primary factor favoring the choice of Wisconsin's law relates to the advancement of this state's governmental interests. The policy of Wisconsin's tort law is to provide full compensation to persons who are injured by negligent conduct and to deter such conduct by imposing the full monetary consequences on the tortfeasor. *Id.* at 600–02, 151 N.W.2d at 674–75. The collateral source rule does not affect the injured person's right to full compensation. The rule does advance the deterrent purpose of Wisconsin tort law, however, because the tortfeasor is not gratuitously benefited by payments made to the

plaintiff by collateral sources. *Rixmann*, 83 Wis. 2d at 580–81, 266 N.W.2d at 331.

We also conclude that the collateral source rule is a better rule of law than Minnesota's no-fault law, which imposes liability on the plaintiff's insurer without regard to fault. The collateral source rule promotes the socially desirable objective of deterring negligent conduct. By contrast, the no-fault system is intended to:

    (1) Insure expeditious compensation of plaintiffs;
    (2) Prevent litigation;
    (3) Prevent overcompensation of plaintiffs;
    (4) Prevent duplication of recovery.

Section 65B.42, Minn. Stats. The collateral source rule arguably affects the amount of litigation and permits the possibility of duplication of recovery. Neither of these interests outweighs the deterrent effect of imposing liability on the tortfeasor.

We are unpersuaded that automobile litigation consumes a disproportionate amount of judicial resources, as assumed by Minnesota's no-fault insurance law. We note that Minnesota has not rejected the collateral source rule in other areas of tort liability, *Hueper v. Goodrich*, 314 N.W.2d 828, 830 (Minn. 1982), and permits subrogation in automobile actions when the accident occurred in Wisconsin. Section 65B.53(2), Minn. Stats. Also, duplication of recovery will not result in the many cases involving subrogated insurers. Moreover, we consider the deterrent value of full liability to be more valuable than minimizing the liability of tortfeasors. Ultimately, deterrence is a more effective means to reduce aggregate tort liability.

We conclude that Wisconsin's law recognizing the collateral source rule applies to this case. As a result, McGree can recover from Cleveland and Home Mutual for the damages already paid by American Standard. Because McGree has a right to recover such damages, we must determine next whether to apply Wisconsin's

subrogation law permitting American Standard to recover from Cleveland and Home Mutual. Minnesota's no-fault law prohibits contractual subrogation by insurers.

We conclude that Wisconsin's subrogation law controls American Standard's right to recover in this case.[3] American Standard's subrogation right is a purely contractual right derived from the insurance policy. *Rixmann,* 83 Wis. 2d at 582, 266 N.W.2d at 331–32. Contract rights are determined by the law of the state with which the contract has its most significant relationship. *Handal v. American Farmers Mutual Casualty Co.,* 79 Wis. 2d 67, 73, 255 N.W.2d 903, 906 (1977). Wisconsin has the most significant contacts with the contract involved in this case.

Here, the policy was negotiated, entered into, issued, and delivered in Wisconsin. McGree and his insurer are domiciled in Wisconsin. Premiums were paid and claims filed in Wisconsin. McGree's vehicle was licensed and garaged in Wisconsin. Our supreme court has considered precisely these contacts to require application of the forum state's law. *Urhammer v. Olson,* 39 Wis. 2d 447, 450–51, 159 N.W.2d 688, 689–90 (1968). Although the accident occurred in Minnesota, this factor is relevant only to the tort aspects of the case and has nothing to do with the contract question. *Id.* at 451, 159 N.W.2d at 690. Because Wisconsin's law permitting contractual subrogation applies, the trial court correctly entered judgment in favor of American Standard.

*By the Court.*—Judgment affirmed.

---

[3] We note that Cleveland and Home Mutual probably lack standing to object to American Standard's subrogation right. If no subrogation right exists, then McGree personally can recover for damages paid by his insurer. Whether we apply Wisconsin's subrogation law will not affect the liability of the tortfeasor. The subrogation issue therefore only affects the allocation of the recovery between McGree and American Standard. Cleveland and Home Mutual have no adversarial interest in how the recovery is apportioned.