Stephen A. FREDRICK,
Plaintiff–Appellant,

v.

SIMMONS AIRLINES, INCORPORATED, a corporation, American Airlines, Incorporated, a corporation, and AMR Corporation, a corporation, Defendants–Appellees.

No. 97–3004.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 27, 1998.

Decided May 15, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied June 15, 1998.

James K. Meguerian (argued), D'Ancona & Pflaum, Chicago, IL, for Plaintiff–Appellant.

Columbus R. Gangemi, Jr. (argued), Winston & Strawn, Chicago, IL, for Defendants–Appellees.

Before CUMMINGS, MANION and EVANS, Circuit Judges.

CUMMINGS, Circuit Judge.

From August 1988 until June 19, 1995, Stephen Fredrick ("Fredrick") worked as a pilot for defendant Simmons Airlines, Inc. ("Simmons"). Both Simmons and defendant American Airlines, Inc. are owned by defendant AMR Corporation ("AMR"). Fredrick was a critic of the safety record of the ATR aircraft that Simmons used on many of its flights. In 1993, Fredrick warned Simmons officials about the perceived safety problems

with the ATR. Then, following the October 31, 1994 crash of an AMR-owned ATR plane in northwestern Indiana, Fredrick distributed leaflets about the ATR to passengers at Chicago's O'Hare International Airport and appeared on the television program "Good Morning America" to discuss his safety concerns.

Upon his return to O'Hare on December 3, 1994 following the television appearance, Fredrick prepared to work on a round-trip flight to Rockford, Illinois. Before the flight departed, however, two Simmons employees accompanied by a security officer who was also employed by an AMR–affiliated entity instructed Fredrick to remove his bags from the plane. He complied, and the Simmons employees searched Fredrick's "flight bag," which contained materials related to Fredrick's work and the flight he was scheduled to make. When the officials demanded that Fredrick allow them to search his personal bags as well, he stated that he would only open the bags if airport security or local police officers were present. Simmons responded to this refusal by suspending Fredrick without pay for insubordination.

Ten days later, Simmons placed Fredrick on administrative leave. On June 19, 1995, Simmons terminated his employment. Thereafter, at least according to Fredrick's complaint, Simmons and the other defendants took actions that led to the revocation of Fredrick's medical certification by the Federal Aviation Administration ("FAA"). As a result of this revocation, Fredrick was unable to work as a pilot. An officer of one of the defendants allegedly stated to Fredrick that the defendants would take steps to allow him to continue to fly if he stopped discussing the ATR's safety problems in public.

Fredrick filed suit in federal court on a claim of tortious interference with prospective economic advantage against all three defendants and a claim of retaliatory discharge against Simmons.[1] Following a mo-

tion by the defendants, the district court dismissed both claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted. Fredrick filed a timely notice of appeal; this Court now affirms the dismissal of his claim for interference with prospective economic advantage, but reverses with respect to the claim of retaliatory discharge.

## I. STANDARD OF REVIEW

 This Court reviews the district court's grant of a motion to dismiss pursuant to Rule 12(b)(6) *de novo. Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund*, 25 F.3d 417, 419 (7th Cir.1994). In reviewing a grant of dismissal, we must take as true all factual allegations in the plaintiff's pleadings and draw all reasonable inferences in his favor. *Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir.1996). We will affirm a dismissal only if it appears beyond a doubt from the pleadings that the plaintiff is unable to prove any set of facts consistent with the allegations of the pleadings that would entitle him to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80); *Gossmeyer v. McDonald*, 128 F.3d 481, 489 (7th Cir.1997).

## II. INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

 Under Illinois law (which the parties agree controls this claim), the elements of tortious interference with prospective economic advantage are: (1) that the plaintiff had a reasonable expectation of entering into a valid business relationship, (2) that the defendant knew of this expectancy, (3) that the defendant intentionally and unjustifiedly interfered to prevent the expectancy from being fulfilled, and (4) that damages to the plaintiff resulted from the interference. *Anderson v. Vanden Dorpel*, 172 Ill.2d 399, 217 Ill.Dec. 720, 723–24, 667 N.E.2d 1296, 1299 (1996). In its oral statement of reasons for dismissing the case, the district court

---

1. Fredrick's complaint also included a claim under 42 U.S.C. § 1983, but Fredrick voluntarily dismissed that count. Although federal question jurisdiction was thereby destroyed, the complaint also invoked the district court's diversity jurisdic-

tion. The defendants apparently did not challenge this alternative basis of jurisdiction, and the district court retained jurisdiction over the remaining claims on this ground.

declared that Fredrick had failed to allege that any conduct by the defendants was directed toward a third party with whom he might have had a business expectancy. The court also saw as "valid" the defendants' arguments that Fredrick had failed to identify any third parties with whom he had a valid business expectancy, failed to allege that the defendants intentionally interfered with any such expectancy, and failed to allege that damages resulted.

It is debatable whether the ground upon which the district court relied is sufficient to justify dismissing the claim. Let us assume for the time being that Fredrick's allegation that he "legitimately expected to continue his work as a commercial pilot" (Plaintiff–Appellant's Appendix (hereinafter "Pl.App.") at A–8, para. 45) sets out the required business expectancy. The further allegation that the defendants engaged in "efforts and actions" via the FAA aimed at preventing Fredrick from finding work as a pilot (see Pl.App. at A–7, para.para. 36, 40) may well be enough to satisfy the requirement that the defendants' actions be "directed toward" the third party or parties with whom the plaintiff had the business expectancy. See, e.g., Douglas Theater Corp. v. Chicago Title & Trust Co., 266 Ill.App.3d 1037, 204 Ill.Dec. 360, 366, 641 N.E.2d 584, 590 (1994). Fredrick's argument that the defendants, in directing their actions toward the FAA rather than other individual airlines, merely utilized the most efficient means available to ruin his job prospects with all other airlines simultaneously is not unconvincing. Particularly in light of the Federal Rules' liberal system of notice pleading, Fredrick's allegations may have been sufficient in this regard.

■ We need not ultimately resolve this question, however, for Fredrick's complaint is deficient in other respects that fully support the district court's dismissal of this claim. Most glaringly, he has failed to allege any reasonable expectation of a business relationship at all. Above we assumed for the sake of discussion that this element had been sufficiently pled, but upon examination it is not so. Fredrick alleges merely that he wished to continue working as a commercial pilot. He does not claim that he had been offered a job by any other airline, or even that he had interviewed or applied for such positions. The Supreme Court of Illinois has held that "[t]he hope of receiving a job offer is not a sufficient expectancy" to support the tort at issue here. Anderson, 217 Ill.Dec. at 723, 667 N.E.2d at 1299. In that case, the plaintiff had alleged that she was the "leading candidate" for the position and that she had received assurances from the persons who had interviewed her that she was being "seriously considered" for the job and that they would recommend that she be hired. Id. at 723–23, 667 N.E.2d at 1299–1300. Fredrick's allegations reveal an even more tenuous basis for claiming a business expectancy than was the case in Anderson, and so the district court did not err in dismissing this claim under Rule 12(b)(6).

## III. RETALIATORY DISCHARGE

### A. Choice of Law

■ Fredrick's complaint alleges that Simmons discharged him from his employment in retaliation for his "going public" with his concerns about the safety of the ATR. As an initial matter, the parties disagree over which state's law should govern the claim. Fredrick argues that Illinois law should control and that under that law his claim was improperly dismissed. Simmons replies that either Texas or Wisconsin law is the appropriate choice, and Fredrick concedes that under either of the latter approaches his claim must fail. The district court opined that Texas or Wisconsin law would be more appropriate than that of Illinois, but ultimately held that the choice of law dispute was irrelevant, because the claim had to be dismissed no matter which state's law applied. This Court does not share the district court's inclination against applying Illinois law to the dispute.

■ A federal court sitting in diversity applies the choice of law rules of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477; Birchler v. Gehl Co., 88 F.3d 518, 520 (7th Cir.1996). The Illinois Supreme Court uses the "most significant relationship" test for choosing the appropri-

ate law in tort cases. *Esser v. McIntyre*, 169 Ill.2d 292, 214 Ill.Dec. 693, 696, 661 N.E.2d 1138, 1141 (1996) (citing *Ingersoll v. Klein*, 46 Ill.2d 42, 262 N.E.2d 593 (1970)). In practice, this means that "the law of the place of injury controls unless Illinois has a more significant relationship with the occurrence and with the parties." *Esser*, 214 Ill.Dec. at 696, 661 N.E.2d at 1141. A court is to determine whether Illinois has the more significant relationship by examining the following factors: (1) the place of the injury, (2) the place where the injury-causing conduct occurred, (3) the domicile of the parties, and (4) the place where the relationship between the parties is centered. *Id.* The Illinois courts also consider "the interests and public policies of potentially concerned states . . . as they relate to the transaction in issue." *Jones v. State Farm Mut. Auto. Ins. Co.*, 289 Ill.App.3d 903, 224 Ill.Dec. 677, 682 N.E.2d 238, 249 (1997) (citation omitted).

Simmons points out that Wisconsin, as Fredrick's domicile, is the state in which his alleged injury took place. The other factors, however, point to more than one state. Simmons is a Delaware corporation with its principal place of business in Texas. Throughout his employment with Simmons, Fredrick was based at O'Hare Airport in Illinois, so that is the most likely candidate for "the place where the relationship between the parties is centered." Moreover, Fredrick's leafleting took place at O'Hare, as did the attempted search of his bags that led directly to his suspension for insubordination. Simmons claims that the actual decision to terminate Fredrick's employment took place in Texas, but it relies for that proposition upon affidavits of its employees. Affidavits are not properly considered in deciding upon a motion under Rule 12(b)(6) unless the district court converts the motion into one for summary judgment under Rule 56.

This Court concludes that Illinois law should apply to this dispute. In addition to the fact that some of the most central aspects of the case point to Illinois, we believe that Illinois has a significant public policy interest in having its law apply to a claim of retaliatory discharge made by an airline employee whose work assignments began and ended within the state. Moreover, Simmons conceded that Illinois law should govern Fredrick's claim of interference with prospective economic advantage, discussed in Part I of this opinion. Yet that alleged tort arguably had less connection to Illinois than does the retaliatory discharge at issue here. On the facts of this case, Illinois law should govern both claims.

## B. Merits

▮▮▮▮ In Illinois, the tort of retaliatory discharge occurs when an employee is discharged in retaliation for his activities, and the discharge violates a clear mandate of public policy. See *Meister v. Georgia–Pacific Corp.*, 43 F.3d 1154, 1160 (7th Cir.1995) (citing *Hartlein v. Illinois Power Co.*, 151 Ill.2d 142, 176 Ill.Dec. 22, 30, 601 N.E.2d 720, 728 (1992)). Illinois' public policy "is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions." *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 52 Ill.Dec. 13, 15, 421 N.E.2d 876, 878 (1981). Fredrick's complaint alleges that Simmons fired him in retaliation for his public criticism of the ATR's safety and that this discharge violates Illinois' public policy of providing for safe air travel. He directs this Court to the Illinois Aeronautics Act ("IAA"), 620 ILCS 5/42, which declares that "[t]he general public interest and safety, the safety of persons operating, using, or traveling in, aircraft, and of persons and property on the ground, and the interest of aeronautical progress requir[e] that aircraft operated within this State should be airworthy. . . ."

Simmons replies that the IAA by its terms does not apply to aircraft engaged in interstate or international commercial flights, as the ATRs that Fredrick complained about were, and therefore that Illinois has no specifically articulated public policy concerning the safety or airworthiness of such craft. The airline also argues that, even if Illinois does have such a public policy, no Illinois case has ever used the tort of retaliatory discharge to protect an employee who has "gone public" with his or her concerns rather than reporting them to the employer or to governmental authorities.

This Court is not willing to hold that Illinois has no public policy interest in the safety of the aircraft that fly into and out of Illinois airports. Nor, in the context of a motion to dismiss, will we hold that the Illinois courts would not afford Fredrick the protection offered by the cause of action for retaliatory discharge. In some circumstances an employee might be justified in taking his concerns directly to the public. The Illinois Supreme Court has not addressed such a case, but one Illinois Appellate Court case appears to support the conclusion that a claim of retaliatory discharge might be based on such facts. In *Paskarnis v. Darien–Woodridge Fire Protection District*, 251 Ill.App.3d 585, 191 Ill.Dec. 138, 623 N.E.2d 383 (1993), a fire chief was terminated for "speaking out" against a policy that he believed hampered the department's ability to train part-time firefighters. See *id.* at 139, 623 N.E.2d at 384. The Illinois court held that the plaintiff had stated a claim for retaliatory discharge. *Id.* at 140, 623 N.E.2d at 385.

Fredrick's complaint alleges that he brought his concerns about the ATR to Simmons' attention in 1993 and that the airline took no action in response. It also alleges that the FAA was aware of Fredrick's criticism of the ATR's safety. Making all inferences in Fredrick's favor, as we must in evaluating a decision to dismiss pursuant to Rule 12(b)(6), this Court cannot say as a matter of law that Fredrick was unjustified in choosing to take his concerns to the public. No Illinois court has held that an employee forfeits his cause of action for retaliatory discharge by complaining publicly rather than privately, and this Court will not take that step today. The district court therefore erred in dismissing Fredrick's claim of retaliatory discharge.

CONCLUSION

The district court was correct in dismissing Fredrick's claim of interference with prospective economic advantage, because the mere hope of obtaining employment is not a protected expectancy. The lower court erred, however, in dismissing the claim of retaliatory discharge. This Court affirms in part and reverses in part, remanding the retaliatory discharge claim for further proceedings consistent with this opinion.