Paul W. THIELE and Carol
Thiele, Plaintiffs,

v.

NORTHERN MUTUAL INSURANCE
COMPANY, Defendant.

No. 98–C–176.

United States District Court,
E.D. Wisconsin.

Feb. 22, 1999.

Matthew S. Vignali, Vignali Law Office, Milwaukee, WI, for plaintiffs.

James Morrison, Morrison Law Office, Marinette, WI, for defendant.

## DECISION AND ORDER

GOODSTEIN, United States Magistrate Judge.

The plaintiffs bring this action against the Northern Mutual Insurance Company, alleging that Northern engaged in bad faith when it denied the plaintiffs' claim for coverage after a barn on their property was destroyed by fire. The plaintiffs commenced this case in the Kenosha County Circuit Court and the defendant removed the case to federal district court pursuant to 28 U.S.C. § 1441.

The case was randomly assigned to this court and the parties consented to this court's full jurisdiction. *See* 28 U.S.C. § 636(c)(1). Jurisdiction is proper based upon diverse parties and the proper amount in controversy. *See* 28 U.S.C. § 1332(a)(1). Venue is proper in the Eastern District of Wisconsin. *See* 28 U.S.C. § 1391(a). Currently pending before the court is the defendant's motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6).

## I. Background

The following facts are undisputed for purposes of the defendant's motion to dismiss. The plaintiffs are Wisconsin residents who own a parcel of property in Rock, Michigan. (Complaint at ¶¶ 1–2). Northern is a Michigan corporation with its principal place of business in Hancock, Michigan. (Complaint at ¶ 3). The plaintiffs purchased a standard fire insurance policy for their Michigan property from Northern, which the plaintiffs allege covers damage caused by fire to a barn located on the property. The policy, which was in effect at all relevant times, provided $6,350 in coverage. (Complaint at ¶ 4).

On July 1, 1995, the plaintiffs' barn was destroyed by fire. The plaintiffs tendered a claim to Northern, which the plaintiffs allege Northern refused to pay. (Complaint at ¶ 7). According to the plaintiffs, Northern's only explanation for not paying the plaintiffs' claim was that Northern asserted that the barn was excluded as a covered item on the policy. (Complaint at ¶ 8).

On June 28, 1996, the plaintiffs commenced a lawsuit in the Kenosha County Circuit Court in which they sought damages from Northern under the policy and from other defendants under separate causes of action for the barn's damage. Northern filed an answer wherein it denied that the barn was covered by the policy, a defense it maintained throughout the lawsuit. (Complaint at ¶ 10). The plaintiffs allege that a deposition taken by Grant Hupy, Northern's agent who sold the policy to the plaintiffs, revealed that Northern knew as soon as the claim was tendered that the plaintiffs' barn was not properly excluded from coverage under the plaintiffs' insurance policy and that there was no reasonable basis to deny the plaintiffs' claim for coverage. (Complaint at ¶ 12). Specifically, the plaintiffs state that Northern executed an endorsement, after the barn was destroyed and without the plaintiffs' knowledge, which retroactively excluded coverage for the barn. (Complaint at ¶ 13). A default judgment was entered against Northern by the Kenosha County Circuit Court.

The plaintiffs raise two causes of action in the instant case. First, they allege that Northern knew or recklessly failed to ascertain that the plaintiffs claim should have been paid and that their conduct constitutes bad faith. Second, the plaintiffs seek punitive damages.

## II. Analysis

Northern moves to dismiss this case, alleging that the plaintiffs' fail to state a claim upon which relief may be granted. Northern argues that Wisconsin's choice of law analysis requires that Michigan law be applied to the plaintiffs' claims and that a cause of action for tortious bad faith is not recognized by Michigan law. The plaintiffs respond that Wisconsin law should apply, which recognizes the tort of bad faith, because Northern conducted business in Wisconsin and is therefore liable for torts committed in the process of conducting said business. Alternatively, the plaintiffs argue that the case should not be

dismissed, even if Michigan law is applied, because Michigan recognizes tortious bad faith, albeit in a limited manner.

When evaluating the defendant's motion to dismiss, the court must accept "the well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff[s]." *Mallett v. Wisconsin Div. of Vocational Rehabilitation,* 130 F.3d 1245, 1248 (7th Cir.1997). The motion should be granted only if the plaintiffs cannot prove any set of facts that would entitle them to relief. *See Porter v. DiBlasio,* 93 F.3d 301, 305 (7th Cir.1996).

"A federal court sitting in diversity applies the choice of law rules of the state in which it sits." *Fredrick v. Simmons Airlines, Inc.,* 144 F.3d 500, 503 (7th Cir.1998). Under Wisconsin's conflicts of laws analysis, "the first step is to determine whether there is a conflict, that is, will the choice of one law as compared to another determine the outcome." *Lichter v. Fritsch,* 77 Wis.2d 178, 182, 252 N.W.2d 360, 362 (1977). However, before the court is able to determine whether a conflict exists between Wisconsin and Michigan law, the court must decide under which conflict of law analysis this case falls— contract or tort. The defendants urge the court to consider this case a contract dispute, and in contract disputes, the grouping of contacts rule controls the resolution of conflicts of state law. Northern argues that under the grouping of contacts rule, Michigan law should apply. The Thieles characterize their causes of action as tort claims. Accordingly, the plaintiffs argue, Wisconsin's choice of law principles, as applied to tort claims, require that Wisconsin law apply.

■ Wisconsin law is clear: "[A]n insured may assert a cause of action in tort against an insurer for the bad faith refusal to honor a claim of the insured." *Anderson v. Continental Ins. Co.,* 85 Wis.2d 675, 680, 271 N.W.2d 368, 371 (1978). Moreover, the tort of bad faith is distinguished from breach of contract. "It is a separate intentional wrong, which results from a breach of duty imposed as a consequence of the relationship established by contract." *Id.* at 687, 271 N.W.2d at 374. The defendant correctly argues that the plaintiffs' claim, under Michigan law,

arises under contract law. However, because this court must adopt the conflict of laws principles of the state in which it sits, the court should apply Wisconsin's conflict rule as it pertains to a tort case, since the plaintiffs allege a tort claim recognized by Wisconsin law and the "grouping of contacts" rule only applies to contract disputes. *See Handal v. American Farmers Mutual Casualty Co.,* 79 Wis.2d 67, 73, 255 N.W.2d 903, 906 (1977).

■ Accordingly, the court will apply the traditional three-pronged approach to resolve choice of law issues in tort cases. As noted above, the court must first determine whether a conflict exists between Wisconsin and Michigan law regarding the tort of bad faith. If a conflict exists, the next step is to analyze "whether the contacts of one state to the facts of the case are so obviously limited and minimal that application of that state's law constitutes officious intermeddling." *American Standard Ins. Co. of Wis. v. Cleveland,* 124 Wis.2d 258, 263, 369 N.W.2d 168, 171 (Ct.App.1985). If no officious intermeddling would result, then the court applies the following five choice-influencing considerations to determine which state's law to apply: 1) predictability of results; 2) maintenance of interstate and international order; 3) simplification of the judicial task; 4) advancement of the forum's governmental interests; and 5) application of the better rule of law. *Lichter,* 77 Wis.2d at 183, 252 N.W.2d at 363.

■ By way of background, the plaintiffs claim that their insurer did not provide coverage for damages incurred when a barn on the plaintiffs' property was destroyed by fire. The insurance coverage to which the plaintiffs refer is known as "first-party coverage," in which the insurer contracts to pay benefits directly to the insured. Such coverage is distinguished from "third-party coverage," where the insurer contracts to indemnify the insured against the insured's liability to third parties. *See generally* William A. Shernoff, et al., *Insurance Bad Faith Litigation,* § 5 .01, at 5–3 n. 4 (1998). The difference between first-party and third-party coverage is germane to this case because Wisconsin recognizes the tort of bad faith in first-party

instances while Michigan does not allow such claims.

In *Anderson*, the Wisconsin Supreme Court held that an insurer is liable in tort to the insured where the insured shows that the insurer lacked a reasonable basis to deny benefits under the policy and the insurer had knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. *Anderson*, 85 Wis.2d at 691, 271 N.W.2d at 376. The *Anderson* court noted that the duty of an insurance company to exercise good faith when settling third-party claims is equally applicable "when the insured seeks payment of legitimate damages from his own company." *Id.* at 688, 271 N.W.2d at 375.

■ By contrast, Michigan law does not recognize the tort of bad faith in first-party insurance cases. *See Kewin v. Massachusetts Mut. Life Ins. Co.*, 409 Mich. 401, 295 N.W.2d 50, 56 (1980). A limited remedy is available in Michigan for insureds, who are victims of their insurer's bad faith refusal to honor a valid claim, by the Michigan Uniform Trade Practices Act, Mich.Comp.Laws § 500.2006. However, the only private cause of action available to the insured is to recover an interest penalty in the amount of twelve percent interest on claims not paid on a timely basis. *See Barker v. Underwriters at Lloyd's, London*, 564 F.Supp. 352, 355 (E.D.Mich.1983). Thus, a conflict exists between Wisconsin and Michigan law such that the choice of one state's law would determine the outcome of this case.

■ Next, the court must consider whether the defendant's contacts with Wisconsin are so minimal that applying Wisconsin law to the defendant constitutes officious intermeddling. Northern insured property owned by Wisconsin residents, the policies and premium notices were delivered in Wisconsin, the plaintiffs paid their premiums from Wisconsin, and correspondence was exchanged between the parties in Wisconsin. Moreover, Northern contends that Plaintiff Paul Thiele excluded the barn from coverage during a telephone conversation from Thiele's Wisconsin residence. Thus, subjecting Northern to Wisconsin tort law does not constitute officious intermeddling. *See American Standard Ins.*, 124 Wis.2d at 267,

369 N.W.2d at 173 (no officious intermeddling where policy negotiated, entered into, issued and delivered in Wisconsin, although accident occurred in Minnesota).

■ Finally, the court must apply the five choice-influencing considerations. As noted above, the choice-influencing considerations are: 1) predictability of results; 2) maintenance of interstate order; 3) simplification of the judicial task; 4) advancement of the forum state's governmental interest; and 5) application of the better rule of law. As for predictability of results, an insurance company that conducts business with residents of various states should expect to be subject to the tort laws of that state if the insurer engages in bad faith with respect to the insurance policy. Of course, if a company's operation is national in scope, it may be subject to the tort laws of many states, but it is "predictable" that if a tort is committed against a Wisconsin policy holder, for example, Wisconsin tort law will apply. Maintenance of interstate order is only implicated if application of either state's law is unreasonable, which is not the case with either Wisconsin's or Michigan's law related to the tort of bad faith. *See American Standard Ins. Co.*, 124 Wis.2d at 265, 369 N.W.2d at 172. Simplification of the judicial task is likewise not a major factor because this court could apply either the Wisconsin or Michigan laws without great difficulty. "Nevertheless, a court's task is rarely simplified when the lawyers and judges must apply themselves to foreign rather than forum law." *Heath v. Zellmer*, 35 Wis.2d 578, 597, 151 N.W.2d 664, 673 (1967).

The decisive choice-influencing factors are that the forum state's governmental interest will be impeded if Michigan law is applied, and that this court finds Wisconsin's law to be the "better law" with respect to bad faith claims. With regard to the forum state's governmental interest, the Wisconsin Supreme Court succinctly stated the standard for determining the state's interest when Wisconsin law conflicts with another state's law:

The question in private litigation ... is whether the proposed nonforum rule com-

ports with the standards of fairness and justice that are embodied in the policies of the forum law. If it appears that the application of forum law will advance the governmental interest of the forum state, this fact becomes a major, though not itself a determining, factor in the ultimate choice of law.

*Heath,* 35 Wis.2d at 598, 151 N.W.2d at 673.

The policy of Wisconsin is to allow first-party insured's to raise a claim for tortious bad faith against their insurer. This policy would be thwarted if Michigan law was applied, which only allows the insured to recover a de minimis penalty over and above the claim to which the insured is entitled. Wisconsin's interest is uniquely significant with respect to the tort of bad faith because the Wisconsin Supreme Court, in *Hilker v. Western Automobile Ins. Co.,* 204 Wis. 1, 231 N.W. 257 (1930) set the groundwork for the seminal California decision establishing tortious bad faith in first party insurance cases, *Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973). As the Wisconsin Supreme Court noted in *Anderson,* "[i]t was upon the rationale of *Hilker* that the California court concluded that insurers owe their own insureds a duty of good faith in the settlement of first-party claims." *Anderson,* 85 Wis.2d at 690, 271 N.W.2d at 376.

Moreover, this court finds Wisconsin's policy with respect to tortious bad faith vis-a-vis first party insurance coverage the "better law" on this issue. Michigan is only one of four states to reject the tort of bad faith in first-party insurance cases. *See Insurance Bad Faith Litigation,* § 5.01, at 5–5 n. 5. At least twenty-four states have adopted some form of tortious bad faith for first-party insureds. *See Universe Life Ins. Co. v. Giles,* 950 S.W.2d 48, 52 (Tex.1997) (citing cases).

The rationale provided by the Michigan Supreme Court to reject tortious bad faith is based on an unwavering adherence to the law of contracts. In *Kewin,* the Michigan Supreme Court interpreted the plaintiff's complaint seeking emotional distress damages for a bad faith breach of a disability policy, as alleging no more than the failure of the

insurer to discharge its obligations under the insurance contract. Citing prior Michigan precedent, the court noted that such an obligation is not a duty imposed by law on all, the violation of which gives rise to a tort action; rather, the duty arises " 'out of the intentions of the parties themselves and owed only to those specific individuals to whom the promise runs. A tort action will not lie.' " *Kewin,* 295 N.W.2d at 56 (quoting *Hart v. Ludwig,* 347 Mich. 559, 79 N.W.2d 895 (1956)).

Notwithstanding the rejection by the Michigan court, tort law may arise from duties imposed by way of a specialized relationship, rather than a duty imposed by the law on all. The Wisconsin Supreme Court acknowledged such a conception of tort law when it held that the tort of bad faith, although it arises from the breach of contractual relationship, is an intentional wrong, separate from the breach of contract itself. *Anderson,* 85 Wis.2d at 687, 271 N.W.2d at 374.

Of course, an insured in Michigan may recover under breach of contract when the insurer fails to settle a claim in bad faith. However, contract law does not allow punitive damages and the threat of punitive damages acts as an added incentive for insurers to settle claims in good faith. By contrast, the nominal interest penalty allowed by Michigan's Uniform Trade Practices Act is hardly worth the expense and effort for the insured to commence a lawsuit. *See* John A. Sebert, Jr., *Punitive and Nonpecuniary Damages in Actions Based Upon Contract: Toward Achieving the Objective of Full Compensation,* 33 UCLA L.Rev. 1565, 1628 (1986) (observing that statutes providing even maximum penalty of twenty-five percent of the insured's claim are likely to leave the victim of bad faith breach undercompensated and almost always denying the victim any extra net recovery "as solace for his troubles or as an incentive to pursue such litigation"). The importance of providing meaningful punitive damages is explained in a leading treatise on insurance bad faith claims:

> In relation to bad faith insurance law, the significance of the deterrent effect of puni-

tive damages is perhaps heightened because relief for unjust and unfair insurance practices has sometimes not been forthcoming from sources outside the judiciary. For example, in dealing with unfair insurance practices, administrative agencies have often demonstrated inertia, at least from an anxious plaintiff's point of view, and legislative bodies, by and large, have provided for relatively mild penalties in enacting unfair trade and claims practices laws. Awards of punitive damages have the potential for preventing and reforming unfair claims practices and thus may serve an important consumer protection function.

*Insurance Bad Faith Litigation,* § 8.01, at 8–3.

Based on Wisconsin's choice of law principles, the court concludes that Wisconsin law applies to the plaintiffs' claim for tortious bad faith. The defendant's motion to dismiss is therefore denied.

**IT IS THEREFORE ORDERED** that the defendant's motion to dismiss is **denied.** The parties are reminded that in the court will conduct a final pretrial conference on *March 18, 1999, at 2:00 p.m.* in Courtroom 254, United States Courthouse, 517 E. Wisconsin Avenue, Milwaukee, Wisconsin. Pretrial reports should be filed at least **three** days prior to the final pretrial conference and should contain a statement of the ultimate issues to be decided, together with a list of each parties' witness and exhibits. A trial to the court will commence on **April 5, 1999, at 9:00 a.m.** in Courtroom 254.