(No. 78530.—

DIANE ESSER, Appellee, v. JOSEPH McINTYRE, Appellant.

*Opinion filed January 25, 1996.*

Baker & McKenzie, of Chicago (Francis D. Morrissey, Michael A. Pollard and Mark M. Burden, of counsel), for appellant.

Robert A. Chapman, P.C., of Chicago, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

This appeal arises from plaintiff's personal injury suit, in the circuit court of Cook County, seeking damages for injuries allegedly sustained when plaintiff slipped on unpopped popcorn kernels spilled by defendant. At the close of the evidence, the jury returned a verdict in favor of defendant. The appellate court reversed and remanded for a new trial, holding that the jury instructions improperly stated defendant's duty of care. (267 Ill. App. 3d 611.) This court granted defendant's petition for leave to appeal (145 Ill. 2d R. 315). We affirm.

## FACTS

In 1983, three men, Joseph McIntyre, Donald Fett, and Joseph O'Brien, along with their respective guests, Sue Pence, Joanne Walden Votava, and Eva Myers, planned a five-day vacation to Acapulco, Mexico. When Eva Myers, Joseph O'Brien's guest, became unable to go on the trip, she suggested that O'Brien invite Diane Esser, the plaintiff. After meeting O'Brien once, plaintiff agreed to accompany him and the other couples to Acapulco at O'Brien's expense.

Other than O'Brien, plaintiff did not meet her fellow travelers until she arrived at Chicago's O'Hare International Airport for the flight to Acapulco. When the six travelers arrived in Mexico, they checked into a villa at the Villa Vera Hotel. Their villa was a separate structure with three levels. The lower and upper levels contained bedrooms and the middle level contained a private pool, bar, and kitchen.

Plaintiff testified that, after checking in, the vacationers went out for dinner and then returned to the villa. Around 11 p.m., plaintiff retired to the bedroom and O'Brien followed soon after. Just after midnight, she and O'Brien heard the other vacationers pounding on their locked bedroom door and asking them to come out and "party." Plaintiff and O'Brien declined and remained in the bedroom.

Plaintiff stated that she woke up the next morning at 7 a.m. and sat on the sun deck for a short time. Wearing leather loafers, she then walked to the kitchen to order coffee from room service. As she stepped onto the kitchen's glazed tile surface she fell, hit her back on the floor, and screamed. After falling, she looked around and realized that she had slipped on unpopped popcorn kernels that were strewn across the kitchen floor.

Plaintiff testified that O'Brien and defendant McIntyre responded when she fell. Plaintiff asked defendant why no one had cleaned up the popcorn. Defendant

replied that he was sorry and that he had opened the popcorn the night before and spilled it, but could not find anything to clean it up.

Plaintiff further testified that she delayed seeking medical attention until she was back in Chicago, where she could see her own doctor. During the remainder of the trip, plaintiff suffered back pain and developed bruises on her left arm, left leg, and hip as a result of the fall. Plaintiff admitted, however, that she was still able to sunbathe by the pool and participate in various activities throughout the remainder of the vacation.

Plaintiff then testified that, after returning to Chicago, she consulted her physician, who prescribed a neck collar and pain medication, and advised her to keep her legs elevated. In 1984, she underwent back surgery for a ruptured disc, during which her lower spine was fused. In 1991, she underwent a second surgery for refusion of her lower spine. Plaintiff testified that, as a result of the fall, she continues to experience back pain which limits her physical activity. Further, these physical problems have caused her to suffer depression, for which she takes medication.

Defendant disputed plaintiff's testimony regarding her fall. He and the other four travelers testified that they were never aware that plaintiff fell and stated that they observed plaintiff participating in various activities after the alleged fall, including swimming, dancing, shopping, and lounging on a raft in the pool. O'Brien, Pence, and Votava further testified that they noticed no bruises on plaintiff's body even though they observed her wearing a bikini in the days following the alleged fall. Photos taken of plaintiff during the vacation corroborate that there were no bruises.

Defendant and the other four vacationers also testified that there was never any popcorn in the villa during the vacation. In addition, defendant stated that he

suffers from diverticulitis, which prevents him from eating popcorn. However, plaintiff's witness Eva Myers, who was not on this vacation, testified that defendant loved popcorn and had eaten it often during previous sojourns to Acapulco.

## PROCEDURAL HISTORY

Prior to trial, the court ruled that Illinois law, rather than Mexican law, applied to plaintiff's claim. The trial court also determined that defendant was an occupier of land and thus owed plaintiff, a licensee, a duty only to refrain from willful and wanton misconduct. At the close of the evidence, the court instructed the jury that defendant had only a duty to refrain from willful and wanton misconduct. The jury then returned a verdict for defendant. The appellate court reversed and remanded for a new trial because defendant was not an occupier of land and therefore owed plaintiff a duty of ordinary care. 267 Ill. App. 3d 611.

Before this court, defendant argues that: (1) Mexican law rather than Illinois law applies to plaintiff's claim; (2) the trial court properly instructed the jury as to defendant's duty; (3) plaintiff waived any negligence claim against defendant; and (4) evidence of Eva Myers' disreputable occupation was properly admitted.

## ANALYSIS

### I. Choice of Law

Initially, we must determine whether Mexican law or Illinois law applies to plaintiff's claim. The parties agree that plaintiff has no cause of action under Mexican law.

To determine which law applies, we look to the conflicts law of Illinois, the forum State. (*Nelson v. Hix* (1988), 122 Ill. 2d 343, 346, citing Restatement (Second) of Conflict of Laws § 122 (1971).) In *Ingersoll v. Klein* (1970), 46 Ill. 2d 42, this court rejected the *lex loci de-*

*licti* doctrine and adopted the most significant relationship test for deciding among conflicting laws. (*Ingersoll*, 46 Ill. 2d at 47 (citing the preliminary draft of what is now section 145 of the Restatement (Second) of Conflicts of Law).) Under this test, the law of the place of injury controls unless Illinois has a more significant relationship with the occurrence and with the parties. (*Ingersoll*, 46 Ill. 2d at 45.) When applying the most significant relationship test, a court should consider (1) where the injury occurred; (2) where the injury-causing conduct occurred; (3) the domicile of the parties; and (4) where the relationship of the parties is centered. (*Ingersoll*, 46 Ill. 2d at 47.) The court must look at the contacts of the jurisdictions under these four factors and then evaluate those contacts in light of the policies underlying the laws of those jurisdictions.

The first two factors of the most significant relationship test are easily determined. First, plaintiff's injury occurred in Acapulco, Mexico, at the Villa Vera Hotel. Second, the alleged injury-causing conduct—defendant's spilling of the popcorn—also occurred in Mexico.

Third, we must determine the domicile of the parties. The parties do not dispute that defendant's domicile is Illinois. Plaintiff claims that her domicile is Illinois as well, but defendant argues that plaintiff's domicile is unclear since plaintiff has spent significant time living in Utah. However, the relevant time to examine the domicile of the parties is at the time of the accident. (See *Miller v. Hayes* (1992), 233 Ill. App. 3d 847, 850.) Since plaintiff lived in Chicago from her birth until after the 1983 accident, she is an Illinois domiciliary for purposes of the most significant relationship test. Although plaintiff spent five weeks in Utah during 1982 and 10 weeks in Utah during 1983, she was still domiciled in Illinois because she intended to return to Illinois when each visit to Utah was finished.

Fourth, and finally, we must determine where the relationship of the parties was centered. Defendant argues that his relationship with plaintiff was centered in Mexico since plaintiff and defendant had no contact until they met at the airport on the way to Mexico and have had no contact since their return, except regarding plaintiff's lawsuit. Plaintiff responds that everything about her relationship with defendant was centered in Illinois and only the destination involved Mexico. All of the vacationers were Illinois residents, the trip was planned in Illinois, plaintiff's invitation from O'Brien was issued in Illinois, and, finally, the vacationers left from and returned to O'Hare International Airport in Chicago, Illinois.

We conclude that the relationship of the parties was centered in Illinois because (1) plaintiff was invited by defendant's friend O'Brien, an Illinois resident; (2) O'Brien's invitation was issued in Illinois, and (3) defendant planned the vacation with O'Brien and Fett in Illinois.

Under the four factors of the most significant relationship test, the contacts of Mexico and Illinois are as follows: (1) the injury occurred in Mexico; (2) the injury-causing conduct occurred in Mexico; (3) both plaintiff and defendant are domiciled in Illinois, and (4) the relationship between plaintiff and defendant was centered in Illinois. In determining which jurisdiction has the most significant relationship, these contacts must be considered in light of the relevant general principles governing all choice-of-law decisions. (*Nelson*, 122 Ill. 2d at 350 (referring to the seven general principles contained in section 6 of the Restatement (Second) of Conflicts of Law[1]).) Of the principles enumerated in *Nelson*, several are applicable here: (1) the need to fos-

---

[1]Section 6 of the Restatement (Second) of Conflict of Laws (1971) sets forth seven general principles to apply when making a

ter commercial interaction between Mexico and the United States; (2) the policies and interests of Illinois and Mexico, and (3) the protection of the justified expectations of plaintiff and defendant.

In light of these general principles, Illinois law should be applied to plaintiff's claim. First, an application of Illinois law does not hinder commercial interaction between Mexico and the United States. Applying Illinois tort law will not discourage people from going to Mexico for either vacation or business because few, if any, travelers to Mexico choose that locale simply because they are less subject to tort liability.

Second, the interest of the State of Illinois in providing a remedy for an Illinois resident who has been allegedly injured by another Illinois resident outweighs Mexico's interest in limiting tort recoveries. Having provided a legal means for a plaintiff to recover for injuries caused by a defendant's culpable conduct, Illinois has a strong interest in providing that remedy in disputes between Illinois residents. That policy will be circumvented if Mexican law applies since, under Mexican law, plaintiff has no remedy for her claim against defendant. Furthermore, allowing plaintiff to state a claim under Illinois law will not impinge upon Mexican interests since the case requires no involvement by Mexican courts, Mexican defendants, or

---

choice-of-law decision:

"(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied."

Mexican witnesses. Although Mexico has an interest in activity occurring at hotels within its borders, this is a wholly private dispute involving only Illinois residents.

Finally, defendant had no justifiable expectation that Mexican law would limit his liability for any tortious conduct he might engage in while in Acapulco. While "it would be unfair and improper to hold [defendant] liable under [Illinois] law *** when he had justifiably molded his conduct to conform to the requirements of [Mexican law]" (Restatement (Second) of Conflict of Laws § 6, Comment g, at 15 (1971)), defendant does not contend that he acted in reliance on Mexican law. Negligent conduct is rarely, if ever, done with regard to what law will apply to a claim arising from the negligent conduct.

In light of the contacts of Mexico and Illinois under the four factors of the most significant relationship test and the evaluation of those contacts under the relevant general principles, the circuit court properly applied Illinois law. Although both Mexico and Illinois had contacts with the action, Illinois had the most significant relationship, especially considering Illinois' interest in providing tort remedies to its injured citizens.

## II. Jury Instruction

The trial court ruled that defendant was an occupier of land, since he helped pay for the villa, and that plaintiff was a social licensee. Accordingly, the trial court instructed the jury that defendant's standard of care was to refrain from willful and wanton misconduct. This instruction was improper, however, because defendant was not an occupier of the property for purposes of common law premises liability.[2]

---

[2]Under the common law of premises liability, occupiers of land are held to a different standard of care depending on the classification of the entrant onto the property. (*Lee v. Chicago*

In order for defendant to be an occupier of land, he must occupy land with the intent to control it. (Restatement (Second) of Torts § 328E (1965); see *McDermott v. Metropolitan Sanitary District* (1992), 240 Ill. App. 3d 1, 25; *Simpson v. Byron Dragway, Inc.* (1991), 210 Ill. App. 3d 639, 644; *Collins v. Mid-America Bag Co.* (1989), 179 Ill. App. 3d 792, 794.) Although defendant shared the expenses of the villa with O'Brien and Fett, he was not an occupier of land because he did not intend to control the common area where plaintiff allegedly slipped. The record shows that the common area, which included the pool, bar, and kitchen, was not enclosed and was open to anyone who might choose to walk through the area. The hotel, and not defendant or any of the other travelers, was in control of the common area. In fact, hotel employees came into the common area throughout the day and night, without the knowledge of the guests, to clean and maintain the area.

Since defendant was not an occupier of the common area where plaintiff fell, he owed plaintiff an ordinary duty of care. (See *O'Hara v. Holy Cross Hospital* (1990), 137 Ill. 2d 332, 342.) The trial court thus erred in instructing the jury that defendant's duty was only to refrain from willful and wanton misconduct. Since the

---

*Transit Authority* (1992), 152 Ill. 2d 432, 446.) Regarding a licensee or trespasser, the duty of an occupier of land is limited to refraining from willful and wanton misconduct. *(Harkins v. System Parking, Inc.* (1989), 186 Ill. App. 3d 869, 871.) Regarding an invitee, however, an occupier is held to an ordinary standard of care. *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 468 (quoting the Restatement (Second) of Torts § 343 (1965)).

The Premises Liability Act (740 ILCS 130/2 (West 1994) (eliminating the distinction between invitees and licensees as to the duty owed by an owner or occupier of the premises)) does not apply here because plaintiff's injury occurred prior to September 12, 1984, the effective date of the Act. *Stephen v. Swiatkowski* (1994), 263 Ill. App. 3d 694, 698; *Dowen v. Hall* (1989), 191 Ill. App. 3d 903, 910.

jury was instructed on the wrong standard of care, the decision of the circuit court must be reversed and the cause remanded. *Fravel v. Morenz* (1986), 151 Ill. App. 3d 42, 45.

### III. Waiver of Negligence Claim

Defendant argues that plaintiff has waived any claim of negligence against him. Specifically, defendant contends that plaintiff failed to submit a negligence instruction alleging that defendant actually spilled the popcorn.

At trial, plaintiff tendered both negligence and willful and wanton jury instructions. The negligence jury instructions were refused, over plaintiff's objection. Plaintiff then submitted, and the trial court accepted, a willful and wanton jury instruction setting forth particularized averments of wrongdoing by defendant. The instruction alleged that defendant: (1) permitted and allowed kernels of popcorn to litter a common area with a hard glazed tile surface; (2) failed to remove popcorn kernels littering the floor; (3) failed to summon housekeeping to sweep up the popcorn kernels; (4) failed to blockade the area to prevent people from walking there until a cleanup could be made; and (5) failed to warn plaintiff not to walk there.

Defendant now argues that plaintiff's failure to submit a negligence jury instruction containing similar particularized averments of negligence constitutes waiver of any negligence claim. We disagree. Plaintiff's failure to submit a negligence jury instruction containing specific averments of negligence does not result in waiver. It was sufficient that plaintiff submitted alternate instructions stating the law of negligence. See *Auton v. Logan Landfill, Inc.* (1984), 105 Ill. 2d 537, 549 (party may appeal jury instructions issued if the party tenders alternate instructions which set forth the law the party contends was proper).

Moreover, the realities of trial practice support our conclusion that no waiver occurred. In general, specific averments of wrongdoing contained in a jury instruction are not determined until the instructions conference at the close of the evidence. Since the trial court ruled at the instructions conference that the standard of care was something other than negligence, plaintiff was unable to confer with defendant or the judge regarding particularized averments of negligence.

## IV. Testimony Regarding Myers' Occupation

In an effort to rebut defendant's testimony that he was unable to eat popcorn, plaintiff presented an evidence deposition of Eva Myers, who had accompanied defendant to Acapulco in 1982 as O'Brien's guest. Myers was unavailable for trial because she was living in Jamaica. In her evidence deposition, Myers testified that defendant loved popcorn and had eaten it daily during the 1982 trip.

At trial, counsel for codefendant Donald Fett, who was subsequently dismissed from the case, asked defendant if he knew the occupation of Myers. Defendant testified, over plaintiff's objection, that Myers was "a call girl," "a prostitute." Plaintiff objected solely on hearsay grounds, arguing that defendant only knew that Myers was a prostitute because O'Brien had told him so.

The appellate court held that the testimony regarding Myers' occupation was improperly admitted because Myers was never asked about her occupation during the evidence deposition. Defendant contends that plaintiff waived this argument since plaintiff only objected on hearsay grounds at trial. While waiver may have occurred, we address this issue because it may arise on remand.

A witness' general credibility may be attacked by cross-examining that witness regarding a disreputable occupation. (*People v. Winchester* (1933), 352 Ill. 237, 244

(allowing cross-examination regarding witness' operation of a "house of prostitution").) However, the use of extrinsic evidence, *i.e.*, evidence other than the witness' testimony, to impeach is more restricted. Where the question concerns a collateral matter, the cross-examiner must accept the answer given by the witness during cross-examination. (*People v. Collins* (1985), 106 Ill. 2d 237, 269; M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 607.2 (5th ed. 1990).) A matter is collateral if it is not relevant to a material issue of the case. Excluding collateral evidence prevents the jury from becoming distracted from the main issues. *Tzystuck v. Chicago Transit Authority* (1988), 124 Ill. 2d 226, 242.

In the instant case, extrinsic evidence regarding the occupation of Myers was improperly admitted because it was collateral to the main issue—whether defendant spilled the popcorn. Thus, defendant could properly inquire of Myers' occupation only during cross-examination of Myers. Defendant, however, failed to cross-examine Myers during her evidence deposition. Therefore, defendant cannot present Myers' alleged disreputable occupation to the jury on remand if Myers is again unavailable at trial and her testimony is presented through the evidence deposition.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the appellate court, which reversed the decision of the circuit court and remanded for a new trial.

*Affirmed.*