Philip JACKSON, Plaintiff,

v.

CADENCE DESIGN SYSTEMS, INC., Defendant.

Philip Jackson, Plaintiff,

v.

John Olson,[1] Defendant.

No. 97 C 8287, 97 C 8860.

United States District Court, N.D. Illinois, Eastern Division.

June 2, 1999.

1. Although this caption necessarily reflects the manner in which the individual defendant was named, it appears that the correct spelling of his name is "Olsen" rather than "Olson." Accordingly the text of this opinion departs from the caption in the interest of accuracy.

Michael B. Brohman, Stuart Michael Gimbel, Kamensky & Rubinstein, Lincolnwood, IL, for Plaintiff.

Stephen P. Carponelli, Albert M.T. Finch, III, Gregory James Chinlund, Carponelli & Krug, P.C., Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

In conjunction with their joint submission of a proposed final pretrial order ("FPTO"), which this Court approved at the pretrial conference held May 27, 1999, the litigants have also complied with this Court's earlier request by submitting memoranda as to the source of law that should be applied to each claim by Philip Jackson ("Jackson"):

    1.  Jackson's breach of contract claim against Cadence Design Systems, Inc. ("Cadence") in Case No. 97 C 8287; and

    2.  Jackson's tort claim against John Olsen ("Olsen") in Case No. 97 C 8860.

For the reasons set out in this memorandum opinion and order, California's substantive law will provide the rules of decision in the contract claim, while Illinois' substantive law will provide the rules of decision in the tort claim.

■ Step one in the choice-of-law process has generated no dispute between the litigants. It has been clear for nearly six decades (since *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)) that the choice-of-law rules in diversity actions such as these are to be drawn from the forum state, in this instance Illinois (in that respect, see also such cases as *CSX Transp., Inc. v. Chicago & N.W. Transp. Co.*, 62 F.3d 185, 188 (7th Cir.1995)). And here the lawyers have agreed that Illinois applies the "most significant contacts" approach to contract disputes (*id.* at 188–89) and the closely related "most significant relationship" approach to tort actions (*Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500, 503–04 (7th Cir.1998), citing and quoting from *Esser v. McIntyre*, 169 Ill.2d 292, 297–98, 214 Ill.Dec. 693, 661 N.E.2d 1138, 1141 (1996)). This opinion turns then to the application of those approaches to the respective claims at issue in these two actions.

### *Jackson's Tort Claim Against Olsen*

■ Although Olsen carried out his allegedly tortious conduct in California, it impacted Jackson here in Illinois. With the place of injury being accorded presumptive importance in determining the parties' rights and liabilities unless another state "has a more significant relationship with the occurrence and with the parties" (*Esser*, 169 Ill.2d at 298, 214 Ill.Dec. 693, 661 N.E.2d at 1141), each side has sensibly concluded that Illinois substantive law is to control the resolution of Jackson's tort claim. There is thus no need for further analysis.

### *Jackson's Contract Claim Against Cadence*

■ One happy consequence of the substitution of the "most significant contacts" formulation in the Restatement (Second) of the Conflict of Laws ("Restatement") § 188 (1971) for the older and more mechanistic type of decisionmaking that used to dominate this area of law is to bring a more practical and commonsense perspective to the process. Although both the Restatement and the cases do identify several specific factors as relevant to the analysis, the application and weighting of those factors are not as wooden as was the case

when choice-of-law analysis was more primitive.

Thus in the more formative years of the subject (before the advent of such trail-blazing scholars as Professor Walter Wheeler Cook) the "place of contracting"—traditionally spoken of as the place where the last act necessary to form the contract occurred—tended to dominate to the exclusion of other considerations, even despite the often arbitrary consequence of that notion. On that view, for example, a contract signed by Party A and mailed from State X to State Y, where Party B then affixed his John Hancock and mailed it back to Party A, was assigned to State Y as the place of contracting, while the identical sequence of events that involved a contract that was identical in terms except for its inclusion of a common legend such as "This contract is not binding until a copy is delivered to the company at its home office" would be assigned to State X as the place of contracting.

At this point Restatement § 188(2) continues to include the place of contracting as a significant relevant factor (other factors referred to there are the place of negotiation, the place of performance, the location of the subject matter and each party's domicile, residence, place of incorporation or place of business). On that place-of-contracting criterion, Cadence Mem. 3 states misleadingly that if there were indeed contracts between the parties (an issue that Cadence vigorously disputes) "they would have been accepted by Jackson in Illinois."

But that is just not so as to the "last act necessary to form the contract": On the contrary, Cadence's extensive documentation, which it has labeled its Worldwide Sales 1996 [or 1997] Annual Sales Compensation Plan, expressly provides in Book I.A ¶ 1:

> No incentive compensation payments will be made to anyone covered by this Plan until a fully executed copy of the Goal Sheet is signed by the PLAN Participant, two levels of management and

the Director of Human Resources, Sales (Complaint Exs. A and C).

And those 1996 and 1997 Goal Sheets for Jackson (Cadence Counterclaim Ex. A) show that in each instance Jackson signed first, with the required Cadence signatures then being affixed in California at later dates. Having drafted its Plans in that fashion, with no payment obligation whatever being imposed on it until that last act took place in California, Cadence cannot in good conscience quarrel with the "place of execution" having been in that state. Thus the conventional place-of-contracting concept urged by Cadence points not to Illinois but to California.

Cadence takes a similarly skewed approach to the place-of-negotiation factor, stating that it is not applicable because "There were no negotiations between Cadence and Jackson on the matters addressed in the Complaint" (Cadence Mem. 3). That of course is totally myopic. Where as here the Compensation Plans were formulated entirely by Cadence and were made applicable by it to all Plan participants across the board (employees in numerous categories, including Senior Sales Representatives such as Jackson), the "place of negotiation" concept must focus on California (where Cadence promulgated, distributed and enforced the Plan) on an a fortiori basis. In that sense the very absence of negotiation—the total dictation of all of the Plan's terms by Cadence from its California home base—cuts against its effort to describe that factor as neutral. And that is true even apart from the additionally applicable contra proferentem concept.

Next as to place of performance, again Cadence seeks to point to Illinois, this time on the notion that "the place of performance would be the place to which the [commission and bonus] checks were delivered to Jackson" (Cadence Mem. 3–4)—"Cadence's office in Schaumburg, Illinois" (id. at 4). That too is illustrative of the kind of artificiality of analysis re-

ferred to earlier in this opinion. More realistically, this is a situation in which Jackson's performance was Illinois-based, while Cadence's entire performance (especially given the tight controls that it exercises under the Plans, and the rights of termination upon which it insists in opposing any contract-based claim at all) was California-based. As in every contract, it takes two to tango, and thus the place of performance must fairly be viewed as neutral.

That last characterization of neutrality applies with equal force to the final Restatement-identified factor: the domicile, residence, place of incorporation or place of business of each party. With Jackson's residence in Illinois being balanced out by Cadence's California-based location (its Delaware incorporation is really meaningless for this purpose), neither jurisdiction dominates.

In sum, the analysis in terms of the factors identified in Restatement § 188(2) clearly requires the application of California substantive law rather than Illinois law to Jackson's breach of contract claims. And the same conclusion would be compelled by applying a less item-specific and more *Jacobellis v. Ohio*-like ("I know it when I see it") analysis to the facts accurately summarized in Jackson Mem. 2–3:

> In the present case, consideration of those factors weighs in favor of applying California law to the breach of contract claims at issue in this case. Cadence's compensation plans were disseminated from California, and were accepted through Jackson's execution of the related goal sheets, which were delivered to California for counter-execution by Cadence management.[2] Although not negotiated, the 1996 compensation plan was discussed and interpreted at the 1996 sales representatives' kick-off

meeting in California. Jackson performed his part of the compensation plans in Illinois and other Midwestern states, while Cadence paid Jackson's salary and commissions from California. The subject matter of the compensation plans was likewise split between Jackson's Midwest region and Cadence's California headquarters. Jackson is a resident and citizen of the State of Illinois, while Cadence is a Delaware corporation with its principal place of business in California.

### Conclusion

As stated earlier, the substantive law of Illinois will be looked to for the analysis and evaluation of Jackson's tort claim against Olsen, while California law will perform the same function for Jackson's contract claim against Cadence (and, it should be said, for Cadence's contract-based counterclaim against Jackson). Those analyses will form the subject of a later opinion.

---

**2.** [Footnote by this Court] As reflected earlier, because any Jackson entitlement to incentive compensation payments under the Plan could not take effect until Cadence management had signed, that factor expressly calls for California law (where the Cadence signatures—the final required signatures—were affixed), even more strongly than the quoted Jackson statement would suggest.