2024 IL App (1st) 230419-U
No. 1-23-0419
Order filed March 29, 2024

Sixth Division

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

|  |  |  |
|---|---|---|
| KEVIN J. MOORE, | ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) |  |
| v. | ) ) | No. 18 L 005233 |
| S&C ELECTRIC COMPANY, an Illinois Corporation, | ) ) ) ) | The Honorable Catherine Schneider, |
| Defendant-Appellee. | ) ) | Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court.
Presiding Justice Oden Johnson and Justice Tailor concurred in the judgment.

**ORDER**

¶ 1     *Held*: Summary judgment affirmed where plaintiff failed to state a claim for construction negligence under Canadian law.

¶ 2     S&C Electric Canada, Ltd. contracted with Reliable Fire and Security, an Illinois company, to upgrade its security system at its facility in Toronto. During the installation, an S&C Canada employee drove a boom lift truck into Reliable's employee, Kevin Moore, injuring him. Moore sued S&C Canada and its parent company, S&C Electric Company (S&C Chicago), an Illinois

company, alleging negligence and construction negligence. The court dismissed Moore's claims against S&C Canada for lack of jurisdiction. In addition, the court found that even if it had jurisdiction, Canadian law applied, and the case should be transferred to Canada under *forum non conveniens*. S&C Chicago moved for summary judgment on the remaining count, alleging construction negligence. The trial court granted the motion, finding Moore could not state a claim under Canadian law.

¶ 3    Moore contends the trial court erred in applying Canadian law. Specifically, Moore asserts the trial court should have analyzed choice of law anew when ruling on S&C Chicago's summary judgment motion rather than adopting the ruling as to S&C Canada. Moore further contends the trial court erred because a genuine issue exists as to whether S&C Chicago is liable under Canadian and Illinois law.

¶ 4    We disagree and affirm. The trial court's choice of law ruling applied to the issues in the case, and the court was not required to make separate rulings for each defendant. We also agree that Canadian law applies under Illinois' choice of law principles, and Moore failed to state a claim.

¶ 5                                        Background

¶ 6    S&C Chicago hired Reliable Fire and Security to upgrade the security systems at its facilities in Chicago and Wisconsin. In 2019, S&C Chicago advised S&C Canada, its wholly owned subsidiary, to upgrade the security in Toronto. Part of the project included installing security cameras around the exterior of the building that could be monitored from Chicago. Jeffrey Zwijack, a facilities engineer for S&C Chicago, recommended that S&C Canada use Reliable for the upgrade. Zwijack went to Toronto to assess the site, review the project's

technical scope, and request a quote from Reliable on behalf of S&C Canada. (Zwijack left S&C Chicago during the bidding process.)

¶ 7    According to an affidavit from Richard Williams, S&C Chicago's Director of Global Security, S&C Chicago did not mandate S&C Canada upgrade its security system or direct, participate, coordinate, or schedule the work. Nor was S&C Chicago a party to the contract between S&C Canada and Reliable. Williams said S&C Chicago prepared a preliminary scope for S&C Canada as it would be more economical.

¶ 8    James Austin, a Reliable account executive, designed the security system for S&C Canada using photographs from Zwijack. Austin sent the proposal and quote to Zwijack. Besides specifications for the project, the proposal included a statement of Reliable's "Standard Terms and Conditions," which stated, in part: "This agreement is made and entered into in the State of Illinois and shall be in all respects governed by and construed in accordance with the laws of the United States and the State of Illinois as if entirely performed in Illinois and without regard to any conflict of laws rules ***." (An unsigned copy of the proposal appears in the record; the parties acknowledge that the agreement to perform the work was between S&C Canada and Reliable.)

¶ 9    S&C Canada's facilities engineer, Keith Higgins, approved the proposal and submitted a purchase order to Reliable. The purchase order listed S&C Canada as the buyer and its Toronto facility as the "ship to" address. The purchase order directed that invoices go to S&C Canada's accounting department, which was responsible for payment. In an email, Higgins provided Reliable with the name and contact information of the two S&C Canada employees managing the project.

¶ 10    Moore traveled to Toronto in November 2019. He and two S&C Canada employees used a boom lift truck to reposition and weather-seal security cameras near the facility's roofline. Afterward, a S&C Canada employee drove the boom lift truck into oncoming traffic on a public road. According to Moore, the employee instructed him to walk in front of the truck to direct traffic. As he did so, the truck rolled over Moore, injuring his foot and ankle and necessitating surgery.

¶ 11                                    Procedural History

¶ 12    Moore filed a two-count complaint against S&C Chicago alleging negligence and construction negligence. S&C Chicago moved to dismiss, arguing it did not owe Moore a duty of care because it neither owned or controlled the Toronto premises, owned or operated the boom lift truck, nor employed the boom lift truck driver. Before the trial court ruled on the motion, Moore filed an amended complaint that added S&C Canada as a defendant.

¶ 13    S&C Chicago renewed its motion to dismiss, which the trial court granted without prejudice. Moore filed a second amended complaint raising nearly identical negligence and construction negligence claims against S&C Chicago and S&C Canada. Moore alleged that S&C Chicago, through its agents and employees, was present and directly participated in the accident. The trial court granted S&C Chicago's motion for summary judgment as to count I, alleging negligence, with prejudice, but not as to count II, alleging construction negligence, for the reasons stated in open court. (The record does not contain a copy of the hearing transcript.)

¶ 14    Meanwhile, S&C Canada moved to dismiss for lack of personal jurisdiction or, alternatively, on *forum non conveniens* grounds because the accident occurred in Canada and involved a truck owned by S&C Canada driven by an S&C Canada employee. The trial court

granted the motion, finding the court lacked personal jurisdiction over S&C Canada, and even if the court had jurisdiction, Canadian law applied based on Illinois' choice of law factors, and Canada was the more convenient forum. Moore did not appeal these rulings.

¶ 15      S&C Chicago renewed its summary judgment motion on the remaining count of construction negligence. S&C Chicago argued the trial court had already decided Canadian law applied and, under either Canadian or Illinois law, the motion should be granted absent evidence S&C Chicago participated in the incident or could have foreseen Moore would be injured by a boom truck lift moving against traffic on a Toronto public road. Specifically, S&C Chicago argued it (i) did not own or control the property where the alleged injuries occurred; (ii) did not own or control the boom lift truck that struck Moore; (iii) did not employ or control the person who allegedly drove the truck; and (iv) did not exert sufficient control over S&C Canada or the project to be held liable for the alleged conduct.

¶ 16      S&C Chicago attached to the motion the deposition of John Johann, S&C Chicago's corporate secretary and treasurer, who testified that S &C Canada is a wholly owned subsidiary of S&C Chicago but (i) operates as a separate entity, (ii) with a separate board of directors, (iii) its own payroll, (iv) pays its own taxes, and (v) maintains its own accounts separate from S&C Chicago. S&C Canada is incorporated in Canada and solely owns the Toronto facility. Additionally, S&C Chicago did not own the boom lift truck or employ the driver.

¶ 17      In response, while noting that the trial court had already ruled Canadian law applied, Moore argued that under both Canadian and Illinois law, he had raised issues of material fact precluding summary judgment.

¶ 18      The trial court granted the motion. The trial judge (not the judge who ruled on choice of law involving S&C Canada) found the earlier choice of law ruling bound her and concluded

that under Canadian law, Moore failed to raise a genuine issue of material fact as to whether S&C Chicago could be liable on a theory of negligence. The trial court stated that to hold a parent company liable under Canadian law, a plaintiff must show (i) direct liability and (ii) duty of care. *United Canadian Malt Ltd. v. Outboard Marine Corp*. [2000] OJ No 1554. Duty of care requires the plaintiff to show the injury was foreseeable, and that sufficient proximity existed between the plaintiff and the defendant. *Cooper v. Hobart*, [2013] 3 SCR 537, 548.

¶ 19     Factors relevant to determining proximity include (i) whether the defendant is materially implicated in the creation of the risk to which it has invited others or has control of it; (ii) whether respect for the autonomy of the parties gives rise to a duty to act; or (iii) a commercial or public function that carries an attendant responsibility to reduce the risk of activity to the public. *Fullowka v. Pinkerton's of Canada*, [2010] 1 SCR 132, 150. Relying on this test, Moore could not state a claim because his injury was not foreseeable and even if foreseeable, "there is no degree of control, supervision, or relationship between S&C [Chicago] and Moore to place S&C [Chicago] under a duty of care towards Moore." Accordingly, the court entered summary judgment in favor of S&C Chicago.

¶ 20                                             Analysis

¶ 21     Preliminarily, S&C Chicago contends Moore's brief violates Supreme Court Rules by including misleading headings and false assertions in the statement of facts in violation of 341(h)(6) and improper argument in violation of Rule 341(h)(7). S&C Chicago asks that we strike false and argumentative portions of Moore's statement of facts and find that he has waived parts of his argument not supported by citation to the record.

¶ 22     Under Illinois Supreme Court Rule 341(h)(6) (eff. Oct 1, 2020), the statement of facts should contain the facts necessary to understand the appeal "stated accurately and fairly

without argument or comment, and with appropriate reference to the pages of the record on appeal * * *." Rule 341(h)(7) provides that the argument section sets out the appellant's contentions and the reasons with citation of the authorities and the pages of the record. Ill. S. Ct. Rule 341(h)(7) (eff. Oct. 1, 2020). These rules are obligatory, not advisory. But, where, as here, the brief is adequate in most respects, and the deficiencies do not hinder our ability to review the issues, we will refrain from exercising our discretion. See *Spangenberg v. Verner*, 321 Ill. App. 3d 429, 432 (2001) (declining to strike brief that complied with rules in other ways and violation not so flagrant as to hinder or preclude review). But we caution counsel—adhere to the rules in the future.

¶ 23                                Standard of Review

¶ 24        Summary judgment applies where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022). The court construes the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). "A triable issue precluding summary judgment exists where the material facts are disputed, or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Id.* Courts grant summary judgment where the movant's right is clear and free from doubt. *Id.* We review the trial court's grant of summary judgment *de novo. Argonaut Midwest Insurance Co. v. Morales*, 2014 IL App (1st) 130745, ¶ 14.

¶ 25                                  Choice of Law

¶ 26    We apply Illinois' choice-of-law rules when a party raises an issue regarding the governing substantive jurisdictional law. *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 155 (2007). The first step determines whether an actual conflict between Illinois law and the other jurisdiction's law would impact the outcome. *Id*. We apply Illinois law in the absence of a conflict—that is, no outcome-determinative difference in the two jurisdictions' substantive law. *RS Investments Ltd. v. RSM US, LLP*, 2019 IL App (1st) 172410, ¶ 18.

¶ 27    If the court determines a conflict exists, the court proceeds to the second step—determining whose jurisdictional laws apply. *Townsend*, 227 Ill. 2d at 159-60. In a tort case, we presume where the plaintiff's injury occurred governs substantive law and adhere to that presumption unless another jurisdiction has a more significant relationship to the case. *Id*. at 163; *Ingersoll v. Klein*, 46 Ill. 2d 42, 47-48 (1970). When the site of the injury is fortuitous, this presumption may be inapplicable or relaxed. See *Perkinson v. Courson*, 2018 IL App (4th) 170364, ¶ 53; Restatement (Second) of Conflict of Laws § 145, cmt. e (1971).

¶ 28    Analyzing whether another jurisdiction has a more significant relationship involves two sections of the Second Restatement of Conflict of Laws and consideration of several factors. See *Townsend*, 227 Ill. 2d at 160; Restatement (Second) of Conflict of Laws §§ 6, 145. The factors we consider include: (i) the policies of the forum and other interested jurisdictions, (ii) the relative interests of those jurisdictions in deciding the issue, and (iii) factual questions such as the situs of the injury, the place the conduct causing the injury occurred, the parties' domicile and place of business, and where the relationship between the parties is centered. *Townsend*, 227 Ill. 2d at 160, 170.

¶ 29    Further, as the trial court did here, should an Illinois court determine a foreign jurisdiction's law governs, we consider whether applying the foreign law would violate Illinois public policy.

See, *e.g., Marchlik v. Coronet Insurance Co.*, 40 Ill. 2d 327, 333-34, 239 N.E.2d 799 (1968) (Wisconsin direct-action statute violated Illinois public policy, and Illinois courts would not enforce it); *Pancotto v. Sociedade de Safaris de Mocambique, S.A.R.L.*, 422 F. Supp. 405, 411 (N.D. Ill. 1976) (applying Illinois law, "our educated prediction is that the Illinois courts would refuse to enforce the Portuguese limitation [on compensatory damages] as unreasonable and contrary to Illinois public policy").

¶ 30    The parties agree a conflict exists between Illinois and Canadian law. Applying Illinois conflict of law principles, the trial court found Canadian law applied to resolving S&C Canada's motion to dismiss. Without citing authority, Moore contends that the ruling regarding S&C Canada does not apply to S&C Chicago's summary judgment motion. Moore argues the trial court should have repeated the choice of law analysis. Moore also contends that the court erred in granting summary judgment under Canadian or Illinois law.

¶ 31    S&C Chicago responds that Moore waived this choice of law argument by not raising it in the trial court.

¶ 32    Generally, arguments not brought before the trial court are forfeited and cannot be raised for the first time on appeal. *Mabry v. Boler*, 2012 IL App (1st) 111464, ¶ 15. Moore failed to assert in the trial court that Canadian law did not apply. Indeed, Moore appears to have conceded that it did, stating in his response to S&C Chicago's summary judgment motion, "This Honorable Court previously ruled Canadian law to apply," and adding that under Canadian law, the trial court should deny the summary judgment motion.

¶ 33    Nevertheless, the doctrine of forfeiture limits the parties, not the court. *Walworth Investments-LG, LLC v. Mu Sigma, Inc.*, 2022 IL 127177, ¶ 94; see also *Sakellariadis v. Campbell*, 391 Ill. App. 3d 795, 800 (2009). We may consider arguments not timely raised in

the interests of achieving a just result and maintaining a uniform body of precedent (*Golden Rule Insurance Co. v. Schwartz*, 203 Ill. 2d 456, 463 (2003)), especially a legal issue fully briefed on appeal (*Committee for Educational Rights v. Edgar*, 174 Ill. 2d 1, 11 (1996)). The choice of law issue is well-suited for consideration on the merits.

¶ 34                                  Principle of *Depecage*

¶ 35       S&C Chicago contends that Moore's argument that the trial court should have made one choice of law determination for S&C Canada and a separate choice of law determination for S&C Chicago fails under the principle of *depecage,* and neither caselaw nor other authority supports Moore position.

¶ 36       *Depecage* is "the process of cutting up a case into individual issues, each subject to a separate choice-of-law analysis." *Townsend*, 227 Ill. 2d at 161. *Depecage* conforms with the Restatement (Second) of Conflict of Laws, which focuses on a "selective, issue-oriented approach to determining choice-of-law for a particular issue presented" in a cause of action. *Id*. *Depecage* applies to the issues, not the different defendants. *Id*. (*depecage* entails "issue-oriented" approach and "begins by isolating the issue"); *Ruiz v. Blentech Corp.*, 89 F.3d 320, 324 (7th Cir.1996) ("[t]o properly apply the Second Restatement method, a court must begin its choice-of-law analysis with a characterization of the issue at hand in terms of substantive law."); see also Restatement (Second) of Conflict of Laws § 145, Comment d, at 417 (1971) (noting, analytical approach of *depecage* calls for "separate consideration" of each issue in determining choice of law); Black's Law Dictionary 436 (11th ed. 2019) (defining *depecage* as "[a] court's application of different state laws to different issues in a legal dispute process "whereby different issues" are decided according to laws of different states).

¶ 37    Moore's second amended complaint alleges one injury and asserts two virtually identical claims against each defendant: negligence and construction negligence. Moreover, in his response to S&C Canada's motion to dismiss, Moore asserted, "S&C Canada and S&C Chicago were both deeply involved in the installation project that Plaintiff performed. Plaintiff's position is that they are both liable in this case and that a jury should allocate liability between the Defendants." In short, the issues in counts I and II (against S&C Chicago) mirror counts III and IV (against S&C Canada). The trial court did not err in finding that the ruling on choice of law applied to all issues.

¶ 38                                    Canadian Law Applies

¶ 39    *Depecage* aside, we agree with the trial court that Canadian law controls Moore's claims against S&C Chicago. Illinois has adopted the choice of law methodology set out in the Second Restatement of Conflict of Laws. *Townsend*, 227 Ill. 2d at 155. The "objective of that process" is to "apply the law of the state that, with regard to the particular issue, has the most significant relationship with the parties and the dispute." *Id.* at 159-60. After establishing that an actual conflict of law exists, the court determines whether the Second Restatement contains a presumptive rule. In personal injury action, §146 provides "the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied." Restatement (Second) of Conflict of Laws § 146 (1971).

¶ 40    *Townsend* prescribes that the court "test this presumptive choice against the principles embodied in section 6 [of the Second Restatement] in light of the relevant contacts identified by the general tort principle in section 145." 227 Ill. 2d at 158. "A detailed analysis of all seven

of the section 6 general principles is unnecessary" in a choice-of-law determination for a personal injury tort case. *Townsend*, 227 Ill. 2d at 169-70 (finding subsections (a), (d), (f) and (g) of section 6(2) are not implicated in tort cases). Instead, we concentrate on three subsections of section 6, namely, (b) the relevant policies of the forum, (c) the relevant policies of the other interested state and the relative interests of that state in the determination of the issue, and (e) the basic policies underlying the field of law. See *Townsend*, 227 Ill. 2d at 170, 316.

¶ 41    To these guiding principles, we turn to the concept of the "most significant relationship" formula to discern which state has the most significant relationship with the parties and the dispute. See *Townsend*, 227 Ill. 2d at 159-60. Section 145 "provides a list of the factual contacts or connecting factors that the forum court should consider in choosing the applicable law." *Townsend*, 227 Ill. 2d at 160. The applicable contacts are:

> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicil, residence, nationality, place of incorporation, and place of business of the parties, and
>
> (d) the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145(2), at 414 (1971). See also *Townsend*, 227 Ill. 2d at 160.

¶ 42    Courts evaluate these contacts according to their relative importance to the issue. *Id.*

¶ 43    Whether a court looks first at the section 6(2) general principles or at the section 145(2) contacts does not matter. " 'In either case the Second Restatement's goal is the same—to ensure that a court is not merely "counting contacts," and that each contact is meaningful in light of

the policies sought to be vindicated by the conflicting laws.' " *Murphy v. Mancari's Chrysler Plymouth, Inc.,* 408 Ill. App. 3d 722, 727 (2011) (quoting *Townsend*, 227 Ill. 2d at 168).

¶ 44   Because the injury occurred in Canada, we presume Canadian law applies unless another jurisdiction has a more significant relationship. *Townsend*, 227 Ill. 2d at 159-60.

¶ 45   Turning to the most significant relationship test, the first two factors are easily determined. First, as noted, Moore's injury occurred in Canada at S&C Canada's Toronto facility. Second, the alleged injury-causing conduct—the S&C Canada employee driving into Moore—occurred in Canada. The third factor, the parties' domicile, is also easily determined—Moore resides in Illinois and S&C Chicago is incorporated in Illinois.

¶ 46   Finally, we determine where the relationship of the parties was centered. Relating to Moore's injury while working in Canada, Moore and S&C Chicago did not have a relationship. Moore's employer, Reliable, contracted with S&C Canada, not with S&C Chicago, and S&C Chicago did not own the property where the accident occurred or the truck or employ its driver. Moore had a prior relationship with S&C Chicago, having worked with the parent company on its security systems in Chicago and Wisconsin, and that relationship was centered in Illinois. But as it relates to the incident giving rise to this litigation—the boom lift truck injuring Moore—his relationship, through his employer, was with S&C Canada and its employees, not with S&C Chicago. Thus, Canada has a more significant relationship with the dispute.

¶ 47   Turning to the policy factors in section 145 of the Restatement, Moore argues they favor Illinois law: (i) both parties reside in Illinois, (ii) he was injured while working for an Illinois company under a contract with a choice of law provision applying Illinois law, (iii) two Illinois companies negotiated the contract, and (iv) Illinois policy favors an Illinois resident recovering for injuries to the fullest extent of Illinois law, which Canadian law would thwart.

¶ 48    As to the residency, as noted, both parties are based in Illinois, which is the lone connection to the state. Moore's arguments as to the contract and its choice of law provision fail because neither Moore nor S&C Chicago were parties to the contract between Reliable and S&C Canada. Moore cites no cases supporting a finding that non-parties to a contract may enforce its choice of law provision.

¶ 49    Regarding the sole remaining argument, whether Illinois policy favors applying Illinois law over Canadian law, Moore relies on *Esser v. McIntyre*, 169 Ill. 2d 292 (1996). In *Esser*, the plaintiff, an Illinois resident, while vacationing in Mexico with others, slipped and fell on unpopped popcorn kernels in the kitchen of their villa. The plaintiff sued the guest, also an Illinois resident, who spilled the popcorn, alleging negligence. On the choice of law question, Illinois rather than Mexican law applied due to "the interest of the State of Illinois in providing a remedy for an Illinois resident who has been allegedly injured by another Illinois resident outweigh[ing] Mexico's interest in limiting tort recoveries." *Id.* at 300. Further, "allowing plaintiff to state a claim under Illinois law will not impinge upon Mexican interests since the case requires no involvement by Mexican courts, Mexican defendants, Mexican witnesses. Although Mexico has an interest in activity occurring at hotels within its borders, this is a wholly private dispute involving only Illinois residents." *Id.* at 300-01.

¶ 50    *Esser* is readily distinguishable. Even assuming, as Moore alleges, that both parties are Illinois residents, a Canadian resident working for a Canadian company caused his injuries, and testimony at trial will involve multiple Canadian witnesses. Accordingly, Canada has strong ties to the incident and the lawsuit, which supports the trial court turning to Canadian law on S&C Chicago's summary judgment motion.

¶ 51                    Liability Under Canadian Law

¶ 52      Canadian law provides that a parent company may be liable for a subsidiary's conduct when a plaintiff establishes direct liability and a duty of care. *United Canadian Malt Ltd. v. Outboard Marine Corp.* [2000] OJ No 1554. To establish a duty of care, a plaintiff must prove (i) the injury was foreseeable and (ii) sufficient proximity between the plaintiff and defendant. *Cooper v. Hobart*, [2001] 3 SCR 537, 548. Foreseeability means a reasonable person in the defendant's position would have foreseen the risk of harm that caused the plaintiff's injury. *Childs v. Desormeaux*, [2006] 1 SCR 643. The defendant need not be able to predict the exact injury, but the nature of the general harm must be foreseeable. *Bingley v. Morrison Fuels, a Division of 503373 Ontario Ltd* [2009], 95 O.R. 3d 191.

¶ 53      Proximity focuses on the nature of the parties' relationship for determining a duty of care on the defendant to guard against foreseeable harm to the plaintiff. *Cooper*, 552. In weighing proximity, Canadian courts consider whether (i) the defendant created or controlled the risk to which it invited others, (ii) the autonomy of the parties giving rise to a duty to act, and (iii) a commercial or public function carries an attendant responsibility to reduce the risk of the activity to the public. *Fullowka*, 152.

¶ 54      As to foreseeability (similar to foreseeability under Illinois law), we agree with the trial court. S&C Chicago could not have foreseen Moore's injury. S&C Chicago may have known Moore was performing the work at the Toronto facility and that cameras were near the roof line. But Moore's walking in front of the lift truck traveling into oncoming traffic on a public road could not be considered reasonably foreseeable.

¶ 55      As to proximity, Moore addresses just the first factor, arguing S&C Chicago created or controlled the risk and Moore relied on S&C Chicago "to conduct themselves properly and to ensure [he] had a safe place to perform the work that S&C Chicago contracted him to do." The

record does not support his contention. According to Johann's affidavit and Zwijack's deposition testimony, S&C Chicago's involvement extended to recommending Reliable to S&C Canada, visiting the Toronto facility, and preparing a scope of project report for S&C Canada. Moore has provided no evidence rebutting this. Further, Reliable contracted with S&C Canada, not S&C Chicago. And while completing the project, Moore worked only with S&C Canada employees and acted at the direction of an S&C Canada employee when he walked in front of the truck.

¶ 56     While S&C Chicago may have initiated the project and participated in the planning stages, it was not a party to the contract, involved in the work, in control of the risk, or under a duty to act to prevent Moore's injury. So, Moore has failed to establish his injury was foreseeable or of sufficient proximity. We affirm the order granting summary judgment.

¶ 57     Affirmed.